SAMUEL MOWRY *v.* D. E. DAVENPORT *et al.*

1. WRIT OF ERROR. *Notice of application. Pauper oath.* A writ of error
is in the nature of a new suit, and may be obtained as of right by any
person entitled to it, without notice of the application, and the pau-
per oath, if offered in lieu of the bond required by law, cannot be
refused.

2. SUPERSEDEAS. *Petition.* The supersedeas, to supersede the execution
of a decree upon which a writ of error has been obtained, may be
granted upon notice to the adverse party, or, the statute being direc-
tory, upon the appearance of such parties to defend the writ of error,
and would be good if granted without the petition required by a
rule of court to aid the judge in examining the record.

3. CHANCERY PLEADINGS AND PRACTICE. *Consolidating suits.* The fact
that several suits in chancery are consolidated, or treated as consoli-
dated in order that the same proof might be taken and read in each,

Mowry v. Davenport.

and that they might be heard together, does not change the rules of equity pleading, nor the rights of the parties, those rights still depending upon the pleadings, proof and proceedings in the respective causes.

4. DEED. *Consideration. Estoppel. Parol evidence.* The consideration of a deed of conveyance of land is no part of the contract under the statute of frauds, and, except so far as it operates to estop the grantor to deny any consideration, may be explained, varied or contradicted by parol proof; and where a contract is verbal and entire, and a part only reduced to writing, parol evidence is admissible to prove that part resting in parol, if not required to be in writing.

5. DEPOSITION. *Objection to competency.* A deposition of the complainant testifying generally that all the facts set forth in his bill are true, is good upon a mere objection to competency at the hearing.

6. GARNISHMENT. *Failure of consideration a good defense by debtor. Set-off.* The failure of consideration is a good defense *pro tanto* in favor of the debtor upon a garnishment bill, and only the balance due, after deducting any set-off the debtor may have against his creditor at the filing of the bill, can be reached.

7. JUDGMENT. *What it establishes.* A judgment obtained without fraud or collusion which concludes the debtor, whether rendered upon default, confession or after contestation, is *prima facie*, if not conclusive evidence against his creditors to establish the relation of creditor and debtor, and the amount of indebtedness.

8. AGREEMENT. *To compromise suit and release lien.* A valid agreement carried into effect, upon a good consideration, to compromise a suit and release an attachment lien acquired before the filing of a garnishment bill, will be good against the garnishing creditors, although made after the bill was filed, the attachment lien being a charge upon the garnished debt.

9. SECURITIES. *Marshaling. Rights of creditor with two funds.* The principle of the marshaling of sureties between creditors will not be so applied as to deprive the creditor with two funds of any legal right, or to operate to his prejudice even in delaying him in the collection of his debt; and, therefore, where one of the funds was a debt due from the double creditor himself, and the other a lien on land in another State, such creditor is entitled to be first satisfied out of his own debt.

10. SAME. *Same. As to third parties.* Securities will not be marshaled to the injury of a third person, such as the purchaser of the land which constitutes one of the securities, where such person has an equal equity with the party seeking relief.

Mowry *v.* Davenport.

11. SAME. *Same. Funds not under the jurisdiction of the court.* The question is reserved whether the court will undertake to marshal securities when one of the funds sought to be marshaled is not under its control, or within its jurisdiction.

FROM FRANKLIN.

Appeal from the Chancery Court at Winchester. J. W. BURTON, Ch.

MARKS, FITZPATRICK & GREGORY for complainants.

BRANNON & HUNT, P. TURNEY, J. S. McMURRAY and P. R. CURTIS for defendants.

COOPER, J., delivered the opinion of the court.

A number of cases pending in the chancery court at Winchester were heard together on the 1st of July, 1879, and one decree rendered disposing of all of them on the merits. From this decree Samuel Mowry, who was the complainant in one of the suits to which all the other parties were defendants and the principal defendant in the other suits, prayed an appeal, and it was granted upon his giving bond with security within a given time as required by law. Finding himself unable to give the bond demanded by the clerk, Mowry took the oath prescribed for poor persons. The form in which the appeal was granted was, however, not changed, and the oath was treated as insufficient to perfect the appeal : *Henly* v. *Claiborne*, 1 Lea, 224. Mowry then presented his petition to one of the judges of this court, asking for writs of error and supersedeas. The judge directed the clerk, upon

the petitioner giving bond with security as required by law or otherwise complying with the law, to issue writs of error and supersedeas as prayed, "said writs not to include the amount decreed to L. M. Coover or Marks & Fitzpatrick." The petitioner took the oath prescribed for poor persons before the clerk, the record was filed, and a writ of supersedeas issued, superseding the execution of the decree as to all the parties except the three named. The case has been submitted upon a motion of the appellees to dismiss the writ of error and discharge the supersedeas, and, if the motion should not be sustained, by consent of parties for hearing on the merits.

The motion to dismiss is rested upon the want of notice of the application, and the failure of the petition to point out any error in the decree below. A writ of error is in the nature of a new suit, and may be obtained, as of right, by any person entitled to it without notice of the application: *Spurgin* v. *Spurgin*, 3 Head, 23; *Caldwell* v. *Hodsden*, 1 Lea, 305; Code, secs. 3183, 4515. The writ of error in this case was within the time allowed by law, and the pauper oath could not be refused: *Morris* v. *Smith*, 11 Hum., 134. The motion to dismiss the writ of error is therefore not well taken.

To sustain a supersedeas ordered by one of the judges of this court under the Code, sec. 3178, notice to the "adverse party" of the application has been held to be necessary under the Code, sec. 3133: *Campbell* v. *Boulton*, 3 Baxt., 354. The "adverse parties" in this case would be the parties in whose

favor judgments were rendered in the court below, and there appears, filed with the record, the necessary notice acknowledged by the solicitors, of the judgment creditors, or duly executed. The statute is, moreover, merely directory: *Legale* v. *Ward*, 5 Cold., 451. And the supersedeas might now be granted upon the appearance of the parties, if the plaintiff in error be entitled to it: *Combs* v. *Vogeli*, 7 Baxt., 271. The petition is only required by rule of court to guide the judge in the performance of his duty, and the supersedeas if granted would be good without a petition. The petition does, however, point out the same errors as are relied on to reverse the decree, and must necessarily be considered in disposing of the case upon its merits.

On the 8th of February, 1870, D. E. Davenport, by deed with covenant of general warranty, conveyed to Samuel Mowry in fee a large tract of land in Franklin county, for the recited consideration of $40,-500, of which $25,000 were to be paid in a farm of 309 acres in Saline Township, Wayne county, State of Ohio, $5,000 in cash, and the residue secured by notes of even date, one due 1 January, 1871, for $1,000, three due respectively on the same day of the next succeeding three years for $2,500 each, and the last due 1 January, 1875, for $2,000. At the time of this sale, several suits for large amounts were pending against Davenport in the courts of the county, in which suits the land conveyed had been attached to secure the recovery. The notes of Mowry were, by agreement between him and Davenport, deposited with

Marks & Fitzpatrick, the counsel of Davenport in the pending suit, to be held as security for the payment of their fees, and to indemnify Mowry against any liens which might exist on the land. Some of these suits were afterwards settled by Davenport, and others decided in his favor. Two of them, not thus settled or determined, were not disposed of until after the filing of the attachment bills in this cause. One of these was a suit at law brought by Lethia M. Coover, and the other a suit in chancery brought by the McMinnville & Manchester Railroad Company, the first claiming $50,000 damages, and the other $25,000.

On March 24, 1870, Mowry and wife joined in a deed conveying to Davenport in fee, with covenants of seizin and general warranty, the land in Wayne county, Ohio, received in the foregoing trade at $25,-000. This deed, after reciting that the consideration of this land was the tract of land in Franklin county, conveyed by Davenport to Mowry by the deed of February 8, 1870, and that there were encumbrances on this latter tract, expressly provided that if Davenport failed to remove "any of the said encumbrances which now exist," then Mowry might advertize as required by the laws of Ohio, and sell for cash so much of the land as might be necessary to remove and discharge the encumbrance or encumbrances enforced upon said Franklin county land, and make a deed therefor.

On September 3, 1870, Davenport, by deed with covenants of general warranty, conveyed to Samuel Mowry certain lots in the town of Decherd, in Frank-

lin county, Tennessee, "for a full and valuable con-. sideration in hand paid." Five of these lots had previously, on August 2, 1870, been seized by the. revenue collector of the United States, as the property of Davenport, for the income tax of Davenport for the year 1869, and were, on September 2, 1870, sold and formally conveyed to the United States for $640.62, the amount of taxes and costs. These lots were not redeemed either by Davenport or Mowry.

On February 21, 1871, Jos. A. Mabry, as a cred-itor of Davenport, filed his bill in the chancery court of Franklin county against Davenport as a non-resident of the State, and attached the notes of Mowry in the hands of Marks & Fitzpatrick as the property of · Davenport, and sought to subject Mowry's indebtedness to the satisfaction of his, Mabry's, demand. In his answer to this bill, Mowry stated that early in Feb-ruary, 1870, Davenport sold to him in gross, for the consideration of $40,500 paid and to be paid as above set out, the land embraced in the deed of the 8th of February, 1870, with the crops, stock, farming imple-ments, vehicles and household furniture thereon, and the lots in Decherd afterward conveyed by the deed of September 3, 1870. He also stated that Davenport had failed to deliver, and had carried off, in violation of the contract of sale, certain specified articles of personal property, had fraudulently overestimated the number of stock and quantity of produce on the place, and his right to certain chattels subsequently claimed and taken away by third persons. The answer further mentioned the facts · touching the sale of the Decherd

lots by the United States revenue collector. Upon these facts, Mowry claimed that there had been a failure of the consideration of his notes to the extent of the value of the personalty and lots thus lost. He stated the pendency of the various suits against Davenport in which attachments had been sued out and levied upon the land previous to his purchase, mentioning among others the suits of Lethia M. Coover and the McMinnville & M'nchester Railroad Company, and that his notes, attached by Mabry, had been, by agreement between him and Davenport at the date of their execution, deposited with Marks & Fitzpatrick to secure their fees and to indemnify him against the liens then existing on the land. He admitted that Davenport was a non-resident of the State and insolvent, and insists upon his right to deduction for the failure of consideration, and indemnity before he should be required to pay any part of said notes. He also mentioned that he had paid the first of his notes, and $1,600 on another note, which payments were not controverted.

Marks & Fitzpatrick, who were also made defendants to Mabry's bill, filed an answer in which they said that the notes of Mowry had been placed in their hands, by agreement between the parties, for the purpose of first securing their fees, and then of indemnifying Mowry against the liens on the land. They also specify a number of suits of various parties against Davenport pending at the time of the sale, in which attachments had been levied on the land, and, among others, the action at law of Lethia M. Coover and the

bill in equity of the McMinnville & Manchester Rail-
road Company.

On March 15, 1871, S. Cauvin & Co., on May 25,
1871, G. W. Saulpaw & Co., on September 11, 1871,
W. F. Kercheval, and on June 1, 1872, J. G. Ogden,
each as creditors of D. E. Davenport, filed severally
a similar bill as that of Jos. A. Mabry, attaching the
indebtedness of Mowry to Davenport by the notes in
the hands of Marks & Fitzpatrick, and seeking to
subject it to the satisfaction of their respective demands.
Mowry and Marks & Fitzpatrick filed, in substance,
the same answers as those in the Mabry case to each
of these bills.

On July 1, 1873, Samuel Mowry filed his bill
against Davenport, Marks & Fitzpatrick, Jos. A. Ma-
bry and the complainants in the other four attachment
bills, Lethia M. Coover, and some other persons claim-
ing to be creditors of Davenport, whose names and
demands it is not necessary to specify. In this bill
Mowry sets out his contract with Davenport, the va-
rious conveyances, the loss of personalty and of the
Decherd lots, the deposit of his notes for his indem-
nity, and his payments thereon substantially as in his
answers to the bills of the attaching creditors. He
makes the same claim for deduction or abatement be-
cause of the failure of consideration of his notes and for
indemnity against liens as in his said answers, but does
not mention by name the attachment suit of the Mc-
Minnville & Manchester Railroad Company, nor the
other attachment suits specified in those answers. He
does mention the suit of Lethia M. Coover, and states

that after that suit had been transferred, upon the application of Davenport, to the circuit court of the United States at Nashville, the parties had compromised the litigation and agreed upon the entry of a judgment in favor of the plaintiff for $3,000; that on April 2, 1873, a judgment was entered in the State court, while the suit was yet pending in the United States court, for $4,000; and that the said Coover was proceeding to execute the said judgment by a sale of the land by virtue of the lien of the attachment sued out thereon. The bill attacked the Coover judgment as void, and enjoined its collection. The attaching creditors were made defendants to interplead according to the bill, but in reality to have Mowry's prior rights and the order of the attachment liens on the notes declared.

Coover answered, admitting the compromise and entry of judgment as alleged, and insisting that the addition of a thousand dollars to the amount agreed upon was without her knowledge, and made by Davenport's lawyer for his own benefit. She filed a cross-bill for the purpose of rectifying the judgment to this extent.

The attaching creditors filed separate answers, each admitting that he had brought suit as charged, and, without denying or in any way noticing the other allegations of the bill, insisted upon his or their prior right to satisfaction over the complainant out of the proceeds of his notes. Sometime afterwards, each of these defendants was permitted to file an amended answer stating the fact that Mowry had, on the face

of. his deed to the Ohio land, retained a lien thereon for his in lemnity, and insisting that Mowry should be required to exhaust that security before resorting to the notes attached.

Proof was taken which was read as evidence in all the cases, subject only to exception for incompetency. The chancellor, on final hearing, reformed the Coover judgment, and allowed it to be enforced against the land to the extent of $3,000, with interest. He declared that Mowry, as against Davenport, was entitled to recover the value of the personalty not delivered or lost, the value of the Decherd lots sold for taxes, and the Coover judgment with interest and costs, but, as against the attaching creditors, that he must look alone to the security of the lien retained on the Ohio land. He made a reference to the master to ascertain the amount of Mowry's claim against Davenport. And he gave the creditors of Davenport, Marks & Fitzpatrick first, and the attaching creditors in the order of time of their respective bills, judgments for the amount of their respective claims against Mowry to the extent of the balance found to be due on his notes after deducting the payments not contested. The proof showed that the McMinnville & Manchester Railroad Company's suit had been compromised at $2,500, which Mowry had paid on February 1, 1875. The chancellor refused to notice this payment, or the lien of that suit, because the case was not mentioned by name in Mowry's bill. He directed the costs to be paid by Mowry, the amount to be allowed him as a credit on his notes.

The fact that these several suits were so far consolidated, or considered as consolidated, that the same proof was taken and read in each, and that they were heard together, does not change the rules of equity pleading, nor the rights of the parties. These rights must still turn upon the pleadings, proof and proceedings in the respective causes: *Brevard* v. *Summar*, 2 Heis., 105; *Lofland* v. *Coward*, 12 Heis., 546. The suits of the attaching creditors were mere garnishment bills to subject to the satisfaction of their respective demands the indebtedness of Mowry to Davenport by the notes in the hands of Marks & Fitzpatrick. In his answer to each of these bills, Mowry states the facts, touching their execution and deposit, and claims a credit for payments made, a deduction for the failure of consideration, and indemnity against the liens existing on the land by attachment at the date of their execution, specifying some of these liens, and, among others, those in favor of Lethia M. Coover and the McMinnville & Manchester Railroad Company. Without reference to his subsequent bill, Mowry is clearly entitled to the benefit of whatever defenses he has thus set up which can avail him as the garnishee, and which he may have established by proof.

The proof is clear that the sale by Davenport to Mowry, in consideration of the $40,500, was a lumping one of the tract of land conveyed on February 8, 1870, the crops, stock, and other personalty thereon, certain specified articles excepted, and the lots in the town of Decherd. The proof further shows that a part of this personalty was afterwards carried off by Daven-

port, that there was a deficiency in the number of stock and in the quantity of produce represented to be on the place, and that some chattels on the place were claimed and taken by third persons after the purchase. It further appears that five of the Decherd lots were seized after the sale, but before the conveyance, by the revenue collector of the United States, and sold as the property of Davenport and for his taxes. The chancellor so found the facts, and there is evidence to sustain the finding, without any testimony to the contrary.

It is suggested, not argued, that these claims for losses are colorable, and collusive between Davenport and Mowry, to deprive the attaching creditors of the benefit of their attachments. The only circumstance which tends to sustain the suggestion is, that Mowry had paid one of his notes, and made payment of $600 on another, without, so far as appears, having made complaint of the losses in question, of which the loss of personalty must certainly have been known to him very soon after his purchase. On the other hand, it does not appear that he did not complain, nor are the circumstances attending the payments brought out as they might have been on cross-examination. The extent of loss is, no doubt, exaggerated; but the facts may be sifted on the reference. In the absence of any positive testimony to the contrary, that there has been some loss must be considered as established sufficiently for a reference.

It is also said that the testimony introduced to show that the personalty and Decherd lots constituted a part

of the consideration for the $40,500 is in parol, and such evidence is inadmissible to contradict the recitals of the deed. But the deed does not say that the consideration recited was exclusively given for the tract of land conveyed by the deed of February 8, 1870. It may have been the consideration for other property, as well as the land. The consideration of a deed is, moreover, no part of the contract under the statute of frauds, and no principle is violated by the admission of parol evidence touching it: *Whitby* v. *Whitby*, 4 Sneed, 473. The only effect of a recited consideration is to estop the grantor from denying that there was any consideration, but for any other purpose it may be explained, varied, or contradicted by parol proof: *Perry* v. *Central Southern Railroad Co.*, 5 Cold., 138. And it is well settled that where the original contract was verbal and entire, and a part only reduced to writing, as in the case of a conveyance to pass title in pursuance of the agreement, parol evidence is admissible to prove that portion of the contract which the parties have allowed to rest in parol, if not required to be in writing: *Cobb* v. *Wallace*, 5 Cold., 539.

It is further said that the record fails to show that Mowry has been evicted from the Decherd lots, which were sold for taxes. In his answers to the attachment bills, Mowry does merely say that these lots are claimed by the government, and the title is encumbered and doubtful if not wholly lost. Perhaps at the time no effort had been made under the tax title to interfere with his possession. In his bill,

however, he avers, not only that the title has failed, but that "said lots have been sold and taken from him by superior title," and adds, still more pointedly, that he "has been evicted and ousted of the possession." In his deposition, Mowry testifies that all the facts set forth in his bill are true, and whether that mode of giving evidence would have stood the test of an exception to the deposition taken in proper time, it is certainly good upon a mere objection to competency at the hearing: *Shea* v. *Mabry*, 1 Lea, 319, 332.

To the extent of the value of the personalty lost to Mowry, there was a failure in the consideration of his notes, and for that value there could be no recovery on the notes by Davenport, nor, of course, by his creditors: *Hinkle* v. *Currin*, 2 Hum., 137. The loss on the lots would be equally a failure of consideration. But if it be treated as a debt for which an action would lie on the covenant of warranty in the deed of conveyance, it would be a case of opposing debts existing at the date of the several attachments, and only the balance due, after deducting the set-off, could be reached by the garnishment bills: *Arledge* v. *White*, 1 Head, 241; *Fay* v. *Reager*, 2 Sneed, 200; *Mayor* v. *Potomac Ins. Co.*, 2 Baxt., 303.

The reservation retained in favor of Mowry in the deed to the Ohio land is only to indemnify him against the encumbrances then subsisting on the land conveyed by deed of February 8, 1870. Neither the claim for the loss of personalty or of the Decherd lots could be considered as encumbrances. Mowry has,

therefore, only the notes to look to for indemnity against these claims, and there is no ground for the doctrine of marshaling securities. The decree below is erroneous in requiring him to look to the Ohio land for the amounts which, upon the reference, may be found due to him upon these items.

The proof of Mowry and Fitzpatrick establishes beyond doubt that the notes of Mowry were, by agreement of Davenport, deposited about the time of their execution in the hands of Marks & Fitzpatrick to secure their fees, and to indemnify Mowry against the liens then on the land, the liens specially intended being those created by the attachments levied on the land in pending suits. And the record clearly shows that two of those liens existed in the cases of the McMinnville & Manchester Railroad Company and of Lethia M. Coover. The deposit or pledge of the notes for the purposes specified was undoubtedly good, and created an equity in favor of the beneficiaries superior to that of a subsequent attaching creditor: *Sugg* v. *Powell*, 1 Head, 221; *Gayoso Savings Institute* v. *Fellows*, 6 Cold., 467; *Flickey* v. *Loney*, 4 Baxt., 172. And the security thus obtained could not be taken from him by a garnishment bill until he was fully indemnified against the intended liens: *Nolen* v. *Crook*, 5 Hum., 312.

The chancellor refused to notice the lien of the McMinnville & Manchester Railroad Company because it was not specifically mentioned in Mowry's bill, and the same reason is relied on in the argument submitted in this court. But the lien, and the suit pending

to enforce it, were specifically mentioned in Mowry's answers to the several attachment bills, and insisted upon as a defense to any recovery against him as garnishee. The rights of the attaching creditors to a recovery depend entirely upon those suits, and Mowry, as a defendant, was beyond question entitled to have the matter passed upon in those suits. The omission to specify the lien in his subsequent bill could not affect that right.

The suit of the McMinnville & Manchester Railroad Company against Davenport was pending at the filing of each of the bills in this case. If it had been still pending at the hearing, all that the court could have done would have been to declare the rights of the parties, and order a reference to ascertain the amount of the lien charge when it was determined. The proof shows that it was compromised, by Davenport admitting a liability to the company of $2,500, which sum was, on February 1, 1875, paid by Mowry in order to relieve the land. These facts could be brought before the court directly by proof, as well as by a report on a reference, at any rate, in the absence of any demand by any party for a reference.

It seems to be thought that such a compromise, made after the filing of the attachment bills, could not be binding upon the attaching creditors. There is high authority for the position that a judgment obtained, without fraud or collusion, which concludes the debtor, whether rendered upon default, confession, or after a contestation, is, upon all questions affecting the title to his property, conclusive evidence against his

creditors to establish the relation of creditor and debtor, and the amount of indebtedness: *Candee* v. *Lord*, 2 N. Y., 275; Big. on Est., 81. But the judgment is, at any rate, *prima facie* evidence of these facts, subject to impeachment by any person interested for fraud or collusion: Freem. on Judg., sec. 334. Not only is there no impeachment of the transaction in this case, but the testimony of Fitzpatrick is positive that the compromise was a good one for Davenport, and manifestly to the advantage of the other litigants. Mowry is clearly entitled to indemnity against this payment.

There seems to be some doubt whether the Coover branch of this case has been brought up, so far as it ascertains and determines the amount of her judgment against Davenport, and that it is a lien on the land attached. If it be not included in the writ of error, as it clearly is not in the *supersedeas*, then the decree of the court in her behalf remains in full force, and Mowry is entitled to be indemnified against the recovery. The compromise in this case was also a judicious one for Davenport, and there is nothing to impeach its good faith to the extent of the amount allowed by the chancellor. The suit was commenced in the State court and removed to the Federal court. That court might, for good cause, have remanded the case to the State court, or the parties might, perhaps, have remanded by consent, the jurisdiction of the court being suspended, not extinguished. And the fact that the judgment was rendered before the entry of a formal order of dismissal in the Federal court, would not avoid the judgment, the subsequent entry, in accord-

-ance with the agreement of parties, relating back to the date of the agreement. Be this as it may, there was a valid agreement upon a good consideration to compromise the suit and release the attachment for $3,000, and this agreement was carried into effect, and might well be confirmed under the Coover cross-bill. Mowry was entitled, under the agreement of pledge, to indemnity against this debt out of his notes.

The plaintiff in error bargained for and obtained security against the existing attachment liens on the land bought, both in the pledge of his notes and in the indemnity reserved by the deed of the Ohio land. To the extent of the amount paid to the McMinnville & Manchester Railroad Company, and the amount agreed to be paid to Coover, in release of their respective attachments, he has therefore two securities for his indemnity. The appellees have only attached one of these securities.

Under these circumstances, it is said by the counsel of the creditors that Mowry having taken the lien on the Ohio land with knowledge of the facts, thus carving out his own security, is bound to look alone to that security. It is difficult to see the force of the suggestion, for it is a mere suggestion, not sustained by any train of reasoning. Both securities were doubt-less bargained for at the same time, when the original trade was entered into, and were, at any rate, obtained long before either of the creditors acquired a lien by attachment. Every person who stipulates for indemnity may be said to carve out his own security, and there is no rule of law which requires a creditor to

resort to a later security rather than to that security which was bargained for first in point of time. And if, by reason of taking a lien on the Ohio land, the plaintiff in error was bound to look alone thereto, it might well be replied, that by carving out his security in his own notes he was bound to look alone to them, and the suggestion becomes absurd.

The real question on this branch of the case is, whether the attaching creditors have any equity to marshal the securities so as to give them the benefit of the security on which they alone have a lien. The general principle is, that if one party has a lien on or interest in two funds for a debt, and another party has a lien on or interest in one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if necessary, wherever it will not touch upon the rights, or operate to the prejudice of the party entitled to both funds: 1. Sto. Eq. Jur., sec. 633; *Lanoy* v. *Duke of Athol*, 2 Atk., 446; W. & T. Lead. Cas. Eq., notes to *Aldrich* v. *Cooper*, 8 Ves., 382; *Henshaw* v. *Wells*, 9 Hum., 580. And it is universally conceded in the practicable application of the principle, that the securities will not be so marshaled as to deprive the party with two funds of any legal right, or operate to his prejudice. The equity is, indeed, not against the creditor, but the common debtor, to prevent him from obtaining the one fund by reason of the recourse of the creditor on the other. It is a creature of the court of equity for the attainment of justice, not to do injustice. It

is usually administered upon bill filed for the purpose, and then only when both funds are actually under, the control of the court, and the creditor having both funds is fully satisfied. Equity treats as a fraud any conduct which tends to delay a creditor in the collec-. tion of his debt, and cannot, therefore, in the administration of this branch of its jurisdiction, sanction any course which would even delay a creditor having the, legal right to two funds in the realization of his debt out of either: *Evans* v. *Duncan*, 6 Watts, 24. He. has the superior legal right, and an equal equity. "It is undeniably true," says the court of errors of New Jersey, "that assets will not be marshaled to the injury of a party over whom he who asks the aid of the court has no advantage": *Herbert* v. *Mechanics Building and Loan Association.* 2 C. E. Green, 502. In all such cases, the creditor asking equity must be content with subrogation, or the assignment of remedies, and assume the expense and take the risk and delay of the subsequent litigation. Upon no principle of law or equity can he throw the burden upon the. creditor having the prior right to both funds. The two funds, it has been held, must be in existence, and the court will no compel a call upon a stock company to create one of them: *In re Professional Ins. Co,,* L. R., 3 Eq., 668. It has also been, held that if both funds are not within the control of. the court the jurisdiction cannot be exercised, as where one of the funds is in another State: *Post* v. *Mackall*, 3, Bland, 513; *Denham* v. *Williams*, 39 Geo., 312.

Without undertaking to say that the court would,

never act, by subrogation or otherwise, if one of the funds was beyond its jurisdiction, or consisted of a debt of the creditor having the double lien, we may confidently say that such a creditor would never be compelled to pay a debt due from himself to other creditors, and look for reimbursement to a lien on land in another State. All that the attaching creditors in this case are entitled to in any event, is subrogation to the lien on the Ohio land, to the extent of the fund attached and taken by the plaintiff in error, and beyond what may be required for his full indemnity. Whether even this relief can be granted where one of the funds is out of the jurisdiction of the court, we do not now determine, for this relief must be denied under the facts of this record. It appears that Davenport has sold and conveyed the Ohio land to a third person not before the court. It does not appear when this sale was made. If before the attaching creditors filed their bills, the vendee would have an equity, if a purchase for value, to require the plaintiffs in error to exhaust the security created by the pledge of his notes before going upon the land, and this equity would be superior to that of a subsequent creditor acquiring a lien only on the notes: *McCormick's Appeal,* 57 Penn. St., 54. And the rule is general that securities will not be marshaled to the injury of third persons having equal equities, as in the case of purchasers: *Reilly* v. *Mayer,* 1 Beas., 55; *Averall* v. *Wade,* Lloyd & G. temp. Sugden, 252; *Bruner's Appeal,* 7 W. & S., 259. If an attaching creditor can call into exercise incidentally, and not by

bill for this purpose, this power of a court of equity,. it can only be when a proper case is clearly estab-. lished.

The record shows that on September 30, 1874,. John H. Martin, guardian of Robert Sharp, a lunatic, filed a bill against Samuel Mowry and others to recover 160 acres of the land sold by Davenport to Mowry; and that on October 3, 1874, Francis Ferrill and others filed a similar bill to recover 40 acres of the land. Both of these bills rested the right of recovery on a title paramount to that of Davenport. The chancellor, it is said in argument, refused to allow the records to be introduced as evidence, because not men-. tioned in the pleadings. The decree seems to be silent on the subject, and the arguments submitted on behalf of the plaintiff in error say nothing in regard to them. The chancellor is probably right in his holding that these suits were not properly put in issue, and it seems clear that they are not now before us· The decree will not prejudice the rights of the plaintiff in error, if any, arising from the pendency or result of these suits.

The decree will be reversed, and a decree rendered here in accordance with this opinion. The costs of this court will be paid by the attaching creditors, and the costs below as directed by the chancellor.