# CHARLESTON

## WINGFIELD *v.* NEALL, TRUSTEE, *et al.*

Submitted January 25, 1906.    Decided March 6, 1906.

1. APPEAL.

   An appeal was unknown to the common law.    In the civil law and equity jurisprudence its object was to take the whole case to the higher tribunal, there to be tried and determined *de novo* upon the issues between the parties, as though the cause had originated in the appellate court.    (p. 111.)

2. APPEAL FROM CIRCUIT TO SUPREME COURT—*Appeal is New-Suit.*

   But, under our statute, an appeal from a circuit court to the Supreme Court of Appeals, is the beginning of a new, and not a continuation of an old, suit.    (p. 114.)

3. PURCHASER OF PROPERTY.

   One who, after final decree and termination of the suit, and before an appeal is obtained, purchases, in good faith, property which is the subject of the litigation, will be protected in such purchase.    (p. 115.)

4. PURCHASER PENDENTE LITE—*Lis-Pendens.*

   In determining the question as to whether or not a purchase is made *pendente lite*, the test is, was there, at the time of the purchase, a suit pending, involving the rule, *lis pendens.*    If so, the purchase is *pendente lite.*    It is otherwise if there is no such suit pending.    (p. 108.)

5. LIS PENDENS.

   The object of the rule, *lis pendens*, is to preserve the property which is the subject of litigation, so as to enable the court, when the questions involved in the suit are finally determined, to execute its judgment or decree.    (p. 110.)

6. SALE OF REAL ESTATE FOR TAXES—*Injunction—Title.*

   Where the holder of a deed of trust, given to secure deferred installments of purchase money, advertises the land conveyed by said deed for sale, to pay such installments, and such sale is enjoined; and, pending the litigation, the land is regularly returned delinquent for the non-payment of taxes thereon, and legally sold and conveyed to one who, after taking such conveyance, sells and conveys the same, the grantee of such person secures good title to the property thereby conveyed.    (p. 116.)

Appeal from Circuit Court, Tucker County.

Suit by Hannah Wingfield against J. S. Neall, Trustee, *et al.*    Decree for defendants and plaintiff appeals.

*Reversed.*

J. P. Scott and C. D. Smith, for appellant.

W. B. Maxwell and A. Jay Valentine, for appellees.

Sanders, Judge:

By deed dated the 28th day of March, 1896, Mary A. Neall conveyed to A. C. Dunbrack three parcels of land, containing about four and a half or five acres, situated in the town of Parsons, Tucker county. Although the conveyance bears this date, Dunbrack did not comply with the terms of sale until the 29th day of June, 1896, on which date he executed his notes and a deed of trust, to secure the deferred payments on the property. In the meantime, on the 4th day of June, 1896, Mary A. Neall insured the house situated on the property in the sum of $2,000, and upon her conveyance to Dunbrack, offered to assign to him the policy, upon payment of the sum paid by her on the premium. This Dunbrack refused to do, and she had the policy assigned to her, on the books of the company. The house was afterwards destroyed by fire, and Mary A. Neall made a composition with the insurance company by which she accepted $1,000, as compensation for the loss, and thereafter had her trustee to advertise the property for sale, to pay the sum secured in the deed of trust given by Dunbrack.

Dunbrack secured an injunction, restraining this sale, on the ground that the policy inured to his benefit, and claimed that the amount thereof was sufficient to pay off and discharge the trust debt.

By decree entered November 28, 1898, the circuit court held that Dunbrack was entitled to have the amount of the insurance policy credited upon his debt, and decreed that upon the payment by him of the sum of $31.80, the balance found due, into court, the clerk of the circuit court should execute a release of the lien of said deed of trust. This sum was paid, and on the 23rd day of May, 1900, the clerk executed the release, which was, on the same day, recorded in the office of the clerk of the county court.

From this decree, Mary A. Neall, on the 28th day of January, 1899, secured an appeal to the Supreme Court. This appeal was never perfected, and at the following term of court, held at Charles Town, a motion was made to dismiss it. This motion the Court refused to entertain, holding

that, inasmuch as there had been no bond filed, there was no appeal pending. On the 8th day of November, 1900, the appeal allowed January 28, 1899, was dismissed, and another appeal allowed, which was perfected, and heard and determined on April 1, 1904, this Court holding that Dunbrack, not having paid the premium on the policy, was not entitled to have the amount thereof credited on his debt.

On the 21st day of August, 1900, Hannah Wingfield purchased from Dunbrack this property, for the sum of $1,300, which amount she borrowed from J. W. Knopsnyder, and executed a deed of trust to secure to him said sum, with W. G. Conley, as trustee.

Upon the cause of *Dunbrack* v. *Neall*, being remanded to the circuit court, Mary A. Neall had her trustee advertise the property for sale, whereupon Hannah Wingfield applied for and obtained an injunction restraining the same, and later filed her bill, setting up the facts already stated, and the further fact that the property was returned delinquent for the years of 1897 and 1898, for the taxes thereon, in the name of A. C. Dunbrack, and purchased by Wm. G. Conley and J. H. Moore; that Moore assigned the benefit of his purchase to Conley, who took a deed for said land from the clerk of the county court, and that she, on the 27th day of May, 1904, purchased the land from Conley. On the final hearing, the circuit court dissolved the injunction, and dismissed the bill.

The first question for consideration is, whether or not the plaintiff, Hannah Wingfield, was a *pendente lite* purchaser. It is claimed by her that the final decree had been entered in the circuit court, adjudicating that the Neall trust lien had been paid off, except the sum of $30.80, and providing when this amount was paid, for the clerk to release the trust lien; that the sum was paid, and the clerk did release the lien; also, that Mary A. Neall in the suit of Dunbrack against her, had applied for and obtained an appeal, which she did not mature by giving bond and printing the record, and this having continued for some time, a motion was made to dismiss it, but this Court decided that there was no appeal to dismiss, because, while it had been allowed, it had not been matured by giving bond, and that after said ruling of this Court, and on the 21st day of August, 1900, she purchased

the property in question, and paid a valuable consideration for it, and that afterwards, on the 8th day of November, 1900, Mary A. Neall renewed her application for an appeal, which was granted and the same matured; and that, therefore, at the time she purchased, the appeal was not pending, and that she was not a *pendente lite* purchaser, but that she is a purchaser for value, without notice. But the appellees claim that she had actual knowledge of the suit, and also that she purchased within the time allowed by law for an appeal, and that an appeal was taken within that time, and the decree of the circuit court being reversed, her title fell with such reversal.

Is the question of *lis pendens* involved? In solving this question, it is necessary to determine whether the property sought to be subjected to the trust lien debt is the subject of the litigation. If it is, the doctrine applies; if not, it does not apply.

It is true that the suit of *Dunbrack* v. *Neall* was for the purpose of adjudicating whether or not the debt secured by the trust deed given by Dunbrack to J. S. Neall to secure the purchase money upon the property sold and conveyed to him by Mary A. Neall had been paid, but the legal title to the property was in the trustee, and Dunbrack held only the equity of redemption.

If the lien created by the trust deed, which is a lien upon specific real property, remained unpaid, the property was subject to be sold in satisfaction thereof, thereby directly affecting the property. If the relief sought in a suit is for the recovery of the possession, or the enforcement of a lien, or an adjudication between conflicting claims of title, or any other judicial action affecting the title, possession or right to possession of specific property, then the property is so directly affected by the decree sought that it becomes subject to the law of *lis pendens*. While this was not a suit brought by Mary A. Neall to enforce her trust lien, yet she was proceeding to enforce it as provided by the trust deed when enjoined, and her right so to do questioned by Dunbrack, and in this suit of Dunbrack against her their rights must be determined, and if her lien is found to be unpaid, still the same rule will apply as would apply if Mary A. Neall had come into equity to enforce it. If the circum-

stances had been such as would have given her the right to file a bill in equity to enforce the trust deed, and she had done so, there is no doubt but that the law of *lis pendens* would have applied, the prime object of the rule being to preserve the subject of litigation, in order to make it possible for the courts to execute their judgments and decrees. As said in *Newman* v. *Chapman*, 2 Rand. (Va.) 93: "It is founded upon the necessity of such a rule, to give effect to the proceedings of courts of justice. Without it, the administration of justice might, in all cases, be frustrated by successive alienations of the property which was the object of litigation, pending the suit, so that every judgment and decree would be rendered abortive, where the recovery of specific property was the object."

Of course, if the appellant had purchased before the final decree of the circuit court, adjudicating that the trust lien had been paid, and instead of so decreeing, it had been adjudged a valid lien, she would then have been held to have bought subject to the trust lien, because it was of record, and she had constructive, if not actual, notice of it. But she did not purchase before the termination of the litigation in the lower court, and not until after the trust lien had been released, as ordered by the court in the final decree. Then can it be said that she was required to take notice of the trust deed, which by the court's final decree was adjudged to have been paid, and ordered to be released? If, upon this adjudication the purchaser would not be required to go back of the decree, and look to the deed of trust, the doctrine of *lis pendens* should apply, in order to preserve the property, that the decree of the court might be fully executed,

If the law of *lis pendens* did not apply, and after the final decree the deed of trust did not give notice to the purchaser, so as to hold any purchase of the property subject thereto, the successful litigant would be deprived of the fruits of the litigation, because some one happened to purchase the subject matter thereof after the rendition of the erroneous decree, and before reversal upon appeal. The rule of *lie pendens* must, therefore, apply in this character of cases.

Was the appellant a *pendente lite* purchaser? The property was purchased by her about twenty months after the final

decree of the circuit court, and before the appellees procured an appeal from this Court, which was allowed only a few days before the time for obtaining same would have expired by limitation. In order to make her a *pendente lite* purchaser, there must be, at the time of the purchase, a pending suit. If there is no pending suit, there can be no *pendente lite* purchaser. Therefore, in order to determine whether there was a pending suit at the time of the purchase, it is necessary to ascertain whether or not our statutory appeal is a continuing suit. If it does not operate to continue the suit, then the suit cannot be said to have been pending at the time of the purchase, because it ended with the final decree of the circuit court, and the appeal operated as a new suit, and the purchase having been made in the interim, the purchaser could not be regarded as a *pendente lite* purchaser. In order to determine this question, it will be proper to determine the scope and meaning of an appeal, in its origination, and in what way the remedy by appeal has been changed by statute, and then to compare our statutory appeal with a writ of error, as it is almost, if not, universally, held that a writ of error is a new action, and that one who purchases the subject of the litigation between the time of the entry of the final judgment and the suing out of the writ, is not regarded as a *pendente lite* purchaser, but is considered a purchaser for value, without notice. And it may be well to remark that whatever may be said here in the discussion of this question is only intended to apply to appeals from the circuit court to this Court, without, in any way, reflecting any views as to appeals from other tribunals to the circuit court.

An appeal was unknown to the common law. In the civil law and equity jurisprudence, its object was to take the whole case to the higher tribunal, there to be tried and determined *de novo*, upon the issues between the parties, as though the cause had originated in the appellate court. It will be found, upon examination of this question, that it is attended with considerable confusion, from the fact that in some of the states the appellate proceeding is denominated "appeal," while in others the distinction between appeals in equity and review upon petition in error is strictly adhered to. "Appeal" is sometimes used with us, in legal lan-

guage, to denote the nature of appellate jurisdiction as distinguished from original jurisdiction, without regard to the particular mode by which a cause is transmitted to a superior court. In fact, our Constitution, Article VIII, section 3, so denominates it. Mr. Powell, in his work on appellate proceedings, (section 4, chapter 6,) says: "Although the various modes of proceedings are prosecuted in different ways and called by different appellations, as 'appeal,' 'review,' 'error' and the like, and these names often confounded and misapplied, yet the object to be attained is one or the other of two results, either by an appeal to obtain a rehearing and new trial of the case upon its facts and merits, or a review of alleged errors in law in the record of the judgment and proceedings which will result either in the reversal or affirming of the judgment, which are properly called 'proceedings in error.' By the first—appeal—when perfected in accordance with the statute and the rules of the court, the whole case with its record and proceedings is taken from the court below into the appellate court, there to be again tried upon the issues between the parties as though the case originated in such appellate court; which appeal has the effect to set aside and vacate the original verdict and judgment in the case; and the result remains wholly dependent on the future judgment which may be rendered in the case upon the appeal and new trial, By the second proceedings—review and error—the result depends entirely upon the question whether the appellate court finds the alleged error in the record of the judgment and proceedings of the court below."

Where an appeal was taken, the judgment or decree did not become operative until the cause was finally tried and determined in the appellate court, as the appeal was taken at the same term at which final judgment or decree was entered in the lower court, and upon taking the appeal, the judgment or decree thereby became vacated.

"An appeal is a process of civil law origin, and is the appropriate mode of review for causes originating in a court of chancery. Unless statutes otherwise provide, it removes the whole cause, subjecting the facts as well as the law to review and re-trial." 2 Ency. Pl. & Pr. 31.

"An appeal is a process of civil law origin, and removes a

cause entirely, subjecting the facts, as well as the law, to a review and retrial; but a writ of error is a suit of common-law origin, and it removes nothing for retrial but the law." *Wiscart* v. *Dauchy*, 3 Dal, 331; *Dower* v. *Richards*, 151 U. S. 658; *Elliott* v. *Toeppner*. 187 U. S. 327; *Lyles* v. *Barnes*, 40 Miss. 608; *Ketchum* v. *Thatcher*, 12 Mo. App. 185; *State* v. *Doane*, 35 Neb. 707; 53 N. W. 611; *U. S.* v. *Goodwin*, 7 Cranch (U. S.) 108; 4 Minor 1059; 2 Cyc. 515; 3 Bl. Com. 453.

Having referred to the true meaning and scope of an appeal before statutory intervention, it will now be proper to determine what is the scope of the remedy afforded by appeal under our statute, and as compared with the remedy by writ of error.

The remedy, by appeal, under our statute, is not given as a matter of right, nor does it operate to remove the cause to this Court for trial *de novo*, neither is it required to be taken at the same term at which the decree complained of is rendered, nor is application made to the trial court for the appeal, as under the civil law. It is a process issuing out of this Court upon petition assigning errors, the same as upon application for writ of error. In fact, the writ of error, and appeal, under our statute, which are used to remove or bring causes to this Court, are only distinguishable in this—appeal lies to equity proceedings, and writ of error to law causes. Therefore, our statutory appeal cannot be considered a continuation of the same suit, because the decree of the lower court, when not suspended, becomes final and operative upon the adjournment of the term, unlike at the civil law, for there, when appeal was taken, it was done at the same term, upon application to the trial court. and when done, the decree never became final.

This being so, the reason ceases for holding that an appeal is a continuation of the suit, while the writ of error is a new action. The decree appealed from is final, so is the judgment. If a writ of error is a new suit, why not an appeal? Under our statute, the two proceedings are alike. The judgment and decree are both final, and become operative upon the adjournment of the term at which they are rendered, if not suspended, and can only then be rendered inoperative by

the awarding of a writ of error and supersedeas, or an appeal and supersedeas, as the case may be. " Except where the statutory proceeding called an appeal is nothing more than a substitute for the common law remedy, by writ of error, an appeal, differs from the writ of error in that it is not a new suit, but a continuation of the suit below." 2 Cyc. 518. "It is a well established principle of appellate procedure that a writ of error is an independent action with the nature and with the general characteristics of a new and original suit." 7 Ency. Pl. & Pr. 823. In the case of *Haley* v. *Elliott*, 37 Pac. (Col. 27), it is held that a writ of error is a writ of right, though subject to regulation by statute, and that it is the commencement of a new suit, and not a continuation of the old one; and see *Wise* v. *Brocker*, 1 Col. 550: *Webster* v. *Gaff*, 6 Col. 475. And in *Widber* v. *Superior Court*, 94 Cal. 430, it is held that a writ of error is a new and original suit, in which original process is issued, and which must be served upon the defendants in error, and which can only affect parties or strangers from the service of citation. The supreme court of Alabama holds that a writ of error is a new suit. 6 Port., (Ala.), 9. And in *Taylor* v. *Boyd*, 3 Ohio 337: "Reversal of decree in chancery under which purchaser in good faith and before service of citation on error, acquired title, does not divest the title of the purchaser."

In Florida it is held: "A writ of error is a new action, and not a continuation of the former suit." *State* v. *Mitchell*, 39 Fla. 303. And the same is held in *Asso.* v. *Weller*, 30 Fla. 210.

By the supreme court of Illinois, in *Eldridge* v. *Walker*, 80 Ill. 270, it is held: "A writ of error to reverse a decree dismissing a bill to avoid a title, is a new suit, and affords no notice to anyone of anything before it is sued out. Therefore, a purchaser for a valuable consideration paid after the order of dismissal and before the issuing of the writ of error, without other notice, will be protected against the equities of the complainant." And the same is held in *Barlow* v. *Standford*, 82 Ill. 298, and *Ripley* v. *Morris*, 7 Ill. 381. So, in Indiana, we find the same doctrine. "If a person having obtained a decree in chancery for certain land and been put in possession, sell the land to a *bona fide* purchaser for

value before a suit in error to reverse the decree is commenced, the title of such purchaser, or of those claiming under him, will not be affected by a subsequent reversal of the decree." *McCormick* v. *McClure*, 6 Black. (Ind.), 466. In *Macklin* v. *Allenberg*, 100 Mo. 337: "A purchaser from one who has acquired title by operation of a decree will be protected where the purchase was made after the termination of the suit, and before the suing out of the writ of error." In this state the writ of error is held to be not a continuation of the suit, but a new action.

The supreme court of Tennessee holds that a writ of error is a new suit. *Squib* v. *McFarland*, 58 Tenn. 563; *Mowry* v. *Davenport*, 74 Tenn. 80; *Spurgin* v. *Spurgin*, 40 Tenn. 23; *Ridgely*, *Admr.*, v. *Bennett*, 81 Tenn. 206; and in *Wooldridge* v. *Boyd*, 81 Tenn. 151: "A writ of error is a new suit and the *lis pendens* under it does not begin until the service of the summons or subpoena."

In *Gibbs* v. *Belcher*, 30 Tex. 80, the supreme court of Texas holds: "The writ of error is a new action, brought in a superior court, founded upon a judgment of an inferior court, for the purpose of supervising it and correcting any errors that may have been in the proceedings of the court below." Bennet on *Lis Pendens*, section 78, says: "The general rule is that notice of *lis pendens* ends with final decree in chancery or judgment at law," and also in section 40, same book, it is held that a writ of error is a new suit, and in section 70 the author says: "In all cases where judgments and decrees have been rendered, and neither appealed from nor superseded, and a writ of error is afterwards sued out, the writ of error is a new suit, and a new *lis pendens* commences to run. This *lis pendens* of the writ of error, however, will relate back to the time of the rendition of the judgment or decree." And the author also says, in section 78: "Where an appeal is prayed and allowed as a part of the judgment or decree, and the terms of the appeal are complied with by the appellant, the judgment or decree becomes suspended and *lis pendens* is continued. * * * If, however, no appeal from the judgment or decree in the trial court shall be perfected, and no writ of error sued out, so as to be a stay of execution of the judgment or decree, *lis*

*pendens* ends at the time of the judgment or decree in the trial court."

The authorities can be multiplied to show that a writ of error is a new suit, and not a continuation of the suit, the proceedings of which are sought to be reviewed.    There are a few cases which hold the contrary, and many which hold that an appeal is a continuation of the suit, but this is not where the statute has so restricted the appeal that in its nature it only operates to review, as does a writ of error.    Entertaining the views we do, we must conclude that the suit cannot be regarded as pending at the time that Hannah Wingfield purchased, and, therefore, she could not be held to be a purchaser *pendente lite.*

When, by the decree of the circuit court, the rights of the parties have been fully determined, and the decree has assumed finality, the successful litigant should have the fruits of the litigation, and where a stranger deals with reference to the property which is the subject of the litigation, after final decree and where it has become operative, and before an appeal and *supersedeas* has been allowed, he should be protected in his purchase.   His equity is superior to that of the unsuccessful litigant.   The case of *Lynch* v. *Andrews*, 25 W. Va. 751, does not run counter to the principles herein announced.   In that case, Lynch purchased before final decree, and JUDGE SNYDER, in delivering the opinion, says: "It is a fundamental principle that the rights of partios to a suit are only such as are settled and fixed by the ultimate result of the suit, and are in no respect affected by interlocutory or intermediate orders and decrees, which are vacated and annulled by the final determination and decrees of the cause."

The plaintiff also contends that the property purchased by her was returned delinquent for the non-payment of taxes in the name of A. C. Dunbrack for the years of 1897 and 1898; that two parcels of it were purchased by W. G. Conley, and one parcel was purchased by J. H. Moore; that Moore afterwards assigned his purchase to Conley, and that she purchased from Conley, and, for that reason, she has good title to the property.    It is not denied, but admitted, that the property was returned delinquent, and purchased by Conley and Moore, nor are the proceedings under which this sale

was made, attacked, in any way, for irregularity.    But the
defendants, in their answer, claim that Conley was only an
ostensible purchaser; that he was acting as attorney for
A. C. Dunbrack, and trustee for J. W. Knopsnyder; that the
purchase by him was, in fact, only a redemption on behalf
of Dunbrack, and that shortly after the purchase, he, by an
endorsement on the back of the receipts, given him by the
sheriff at the sale, assigned the receipt to Dunbrack, and that
thereby the redemption of said land became and was fully
and effectually consummated.    It is not denied that Moore
was a *bona fide* purchaser, but it is claimed that the land
purchased by him was redeemed in behalf of Dunbrack, and
a memorandum made on the back of the receipt held by
Moore, to that effect, and the receipt was turned over to
said Dunbrack, or to some one for him, by Moore, or by
some one on his behalf, but that the endorsements on said
receipts were afterward fraudulently erased.    The general
replication put the appellees, trustee and administrator of
Mary A. Neall, upon proof of these allegations of the
answer, but no proof, upon their part, was taken, and there
is no evidence to substantiate these allegations.    It is true
these receipts are filed, but what do they prove?    The re-
ceipts given by the sheriff to Conley show that the property
was sold to him, and while it appears that they were as-
signed to. Dunbrack, it does not appear that they were ever
delivered to him, or that he ever paid one dollar toward the
redemption or purchase.    Conley, in his answer, says that
they were not delivered, and that Dunbrack did not pay
him anything on account of them.    We cannot conclude,
from these assignments, that Conley was authorized to re-
deem, and did redeem, this land for Dunbrack.    It is just as
reasonable to conclude that these assignments were endorsed
on account of some subsequent transaction, which was never
concluded.    As to the Moore receipt, it is shown that it was
assigned to Conley, and that he paid the cash for it.    The
claim that Conley was trustee, and, therefore, could not pur-
chase the property, is not tenable, because it is shown that
the purchase by him was made some months before he be-
came trustee in the deed from Hannah Wingfield to se-
cure Knopsnyder, even if his being trustee would create such

relation as would make it improper for him to purchase the property.

We cannot say, from these facts, that these assignments were made to Dunbrack, or that the property was redeemed for him. If Conley was the agent of and acting for Dunbrack, and had authority to redeem and did redeem the property for him, it would seem that it could have been made to appear, but there is no attempt to show it, except by the unexplained receipts, with the endorsements thereon, and this, we think, does not do so.

Therefore, the property having been sold for taxes, purchased by Conley and deeded to him by the clerk of the county court, and Conley having conveyed the same to the plaintiff, gives the plaintiff title thereto.

The decree of the circuit court, dismissing the plaintiff's bill and dissolving the injunction, is reversed, and the injunction reinstated and perpetuated.

*Reversed.*