516 S.E.2d 38

Julia K. McCAMMON, M.D., FACOG, Plaintiff,

v.

Bradley R. OLDAKER, Esquire; Frank Venezia, Esquire; E. William Harvit, Esquire; and Sterl Shinaberry, Esquire, Defendants.

No. 25443.

Supreme Court of Appeals of West Virginia.

Submitted March 23, 1999.

Decided June 1, 1999.

Richard A. Robb, Esq., South Charleston, West Virginia, Attorney for the Plaintiff.

Stephen R. Crislip, Esq., William D. Esbenshade, Esq., Jackson & Kelly, Charleston, West Virginia, Attorneys for Oldaker.

James A. Varner, Esq., Catherine D. Munster, Esq., Tiffany R. Durst, Esq., McNeer, Highland, McMunn & Varner, Clarksburg, West Virginia, Attorneys for Venezia, Harvit & Shinaberry.

MAYNARD, Justice:

We are called upon here to answer three certified questions from the Circuit Court of

Harrison County regarding malicious prosecution and tort of outrage claims brought in a medical malpractice countersuit against the attorneys for the plaintiff in the underlying medical malpractice suit. The certified questions and the circuit court's answers are as follows [1]:

I. Whether, the applicable West Virginia statute of limitation bars claims for malicious prosecution and the tort of outrage where the jury verdict was entered in the underlying medical malpractice action more than 2½ years prior to suit but the final decision on appeal of the underlying action was entered within one year of the filing of this suit and the plaintiff's earlier action for malicious prosecution and tort of outrage had been brought and voluntarily dismissed pending the decision on appeal.

Answer of the circuit court: No.

II. Whether, a medical malpractice countersuit against the attorneys for the plaintiff in the underlying medical malpractice suit fails to state a claim in West Virginia based upon malicious prosecution and the tort of outrage, particularly where:

a. the malicious prosecution claim cannot be maintained in the absence of the essential element that the medical malpractice claim was brought without probable cause, and the medical malpractice court, in the underlying case, found that a prima facie medical malpractice case had been proven therein and denied the motion for a directed verdict therein; and,

b. the mere initiation and pursuit of a medical malpractice action provides no basis for a claim that the attorney defendants engaged in extreme and outrageous conduct, as a matter of law.

Answer of the circuit court: No.

III. Whether, the defendant attorneys had an absolute right and duty to pursue the underlying medical malpractice case on behalf of their client in the underlying medical malpractice action, thereby precluding the plaintiff herein from maintaining a medical malpractice countersuit.

Answer of the circuit court: No.

■ These certified questions come to us as the result of the circuit court's denial of the motions to dismiss for failure to state a claim of defendants Bradley R. Oldaker and Sterl Shinaberry and the motion for judgment on the pleadings of defendants Frank Venezia and E. William Harvit. Questions pertaining to a ruling of the trial court on a motion for judgment on the pleadings are properly certifiable.[2] Further, it is well-established that "[a]ny questions pertaining to a ruling of the trial court on a motion which challenges the sufficiency of a pleading are properly certifiable." Syllabus Point 1, *Halltown Paperboard Co. v. C.L. Robinson Corp.*, 150 W.Va. 624, 148 S.E.2d 721 (1966). "However, such certification will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined.... [and] such legal issues ... substantially control the case." Syllabus Point 5, in part, *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994). We have determined that there is a sufficiently precise and undisputed factual record upon which the legal issues may be resolved and that these issues substantially control the case. Therefore, the questions are properly certi-

---

1. In her brief to this Court, Dr. McCammon states that she does not agree with the wording of these certified questions for which she blames her attorney at the time the certified questions were assented to. Dr. McCammon subsequently terminated the attorney's services.

2. W.Va.Code § 58-5-2 (1998) provides in relevant part:

Any question of law, including, but not limited to, questions arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, may, in the discretion of the circuit court in which it arises, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back. The procedure for processing questions certified pursuant to this section shall be governed by rules of appellate procedure promulgated by the supreme court of appeals.

fied under W.Va.Code § 58–5–2 (1998)[3] and are within the jurisdiction of this Court.

## I.

## FACTS

On June 24, 1992, Shelly McDougal and her husband instituted a medical malpractice action against the plaintiff in the instant case, Dr. Julie K. McCammon, alleging that Mrs. McDougal suffered permanent nerve damage as a result of Dr. McCammon's failure to follow proper preventive care while performing Mrs. McDougal's hysterectomy. The McDougals were represented at various stages of the litigation by the defendant attorneys in the instant case, Bradley R. Oldaker, Frank Venezia, E. William Harvit and Sterl Shinaberry. The case proceeded to trial, and on June 1, 1993 the jury returned a verdict in favor of Dr. McCammon. The trial court judgment was entered on June 15, 1993. The trial court denied all post trial motions on September 7, 1993. The McDougals appealed the decision to this Court on January 28, 1994.

On May 2, 1994, Dr. McCammon instituted an action against the defendants in which she alleged malicious prosecution and the tort of outrage stemming from the defendants' representation of the McDougals in the medical malpractice action. On July 14, 1994, Dr. McCammon voluntarily dismissed her countersuit without prejudice because the appeal in the medical malpractice action was still pending. On February 17, 1995, this Court affirmed the medical malpractice judgment in *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788.[4]

On January 23, 1996, Dr. McCammon filed the underlying action against the defendants in the Circuit Court of Harrison County alleging malicious prosecution and intentional infliction of emotional distress for the defendant's conduct in bringing the medical malpractice action and promulgating the subsequent appeal. The trial court denied the

defendants' motions to dismiss and motion for judgment on the pleadings and certified the above-stated questions to this Court. We granted the Petition for Docketing of Certified Questions.

## II.

## STANDARD OF REVIEW

■ We have stated that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syllabus Point 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). With this standard in mind, we now consider the issues before us.

## III.

## DISCUSSION

■ The first question is whether the applicable statutes of limitation bar the plaintiff's claims for malicious prosecution and the tort of outrage. "An action for malicious prosecution must be brought within one year from the termination of the action alleged to have been maliciously prosecuted." Syllabus Point 1, in part, *Preiser v. MacQueen*, 177 W.Va. 273, 352 S.E.2d 22 (1985). "A claim for severe emotional distress arising out of a defendant's tortious conduct is a personal injury claim and is governed by a two-year statute of limitations under W.Va.Code, 55–2–12(b) (1959)." Syllabus Point 5, in part, *Courtney v. Courtney*, 190 W.Va. 126, 437 S.E.2d 436 (1993).

The defendants argue that both the malicious prosecution and tort of outrage claims are time-barred. Concerning the malicious prosecution claim, the issue is when the statute of limitation is triggered. Defendant Venezia, Harvit and Shinaberry urge this Court to adopt the so-called "tacking" doctrine articulated in *Feld v. Western Land & Development Company*, 2 Cal.App.4th 1328, 1334, 4 Cal.Rptr.2d 23 (1992). There the court explained that the applicable statute of

---

3. *See* footnote 1, *supra*.

4. The sole issue in *McDougal* was whether the trial court properly admitted a portion of a surveillance videotape of Mrs. McDougal. Because the tape was not produced or its existence re-

vealed during discovery, the McDougals contended that they were surprised and ambushed by its use. This Court found the admission of the tape to be harmless error.

limitation runs from its accrual upon entry of judgment until the date of filing of the notice of appeal. The statute is then tolled until the conclusion of the appellate process, at which time it commences to run again. Applying this rule to the instant set of facts, explain the defendants, means that the one-year statute began to run on September 7, 1993, the date of the last trial court order, until the McDougals submitted their petition for appeal on January 6, 1994, four months later.[5] The statute was then tolled until February 15, 1995 when this Court issued its opinion. The plaintiff, however, did not file her malicious prosecution claim until January 23, 1996, eleven months later. When this eleven months is "tacked" onto the four months elapsing between the final trial order and the filing of the petition for appeal, the total period is about fifteen months, well in excess of the one-year statute.

Defendant Oldaker, on the other hand, argues that the pendency of an appeal does not toll the statute of limitations. It is his position, rather, that a malicious prosecution claim "terminates in favor of the plaintiff" when the trial court enters a final judgment disposing of the action alleged to have been maliciously prosecuted. Defendant Oldaker bases his argument on this Court's statement in *Allen v. Burdett*, 89 W.Va. 615, 619, 109 S.E. 739, 740 (1921) that "judgment is final and conclusive upon the parties to the suit until it is gotten rid of by some appropriate process." He also cites several cases from other states which hold that a plaintiff has a final and enforceable judgment which is effective until it is set aside and, therefore, has an immediate right to pursue a subsequent claim flowing from the judgment regardless of the pendency of an appeal.

Concerning the tort of outrage claim, the defendants aver that the last act of extreme and outrageous conduct must have occurred during the trial of the medical malpractice action which culminated on June 16, 1993. Because the plaintiff's claim was not brought until January 23, 1996, over two and one-half years later, it is untimely.

The plaintiff contends, on the other hand, that the statutes of limitation do not bar her claims because she is aggrieved by the defendants' conduct both at the trial level and on appeal. Therefore, the defendants' actionable conduct continued until this Court ruled in her favor on February 17, 1995. The plaintiff concludes that since she filed her claims in January 1996, she was within the applicable limitation periods.

*A.*

### *Malicious Prosecution Claim*

We first address whether the plaintiff's malicious prosecution claim is barred by the one-year statute of limitation. This Court has stated, "[t]o maintain an action for malicious prosecution it is essential to prove: (1) That the prosecution was malicious; (2) that it was without reasonable or probable cause; and (3) that it terminated favorably to plaintiff." Syllabus Point 1, *Lyons v. Davy–Pocahontas Coal Co.*, 75 W.Va. 739, 84 S.E. 744 (1915). A necessary element of the tort of malicious prosecution, therefore, is that there must be a termination of the prosecution in favor of the plaintiff. As noted above, the one-year statute of limitation begins to run at this final termination. The dispositive issue which we must decide is when this termination occurs in cases in which an appeal is pending.

Courts in other jurisdictions are divided on this question. Several courts have held that the pendency of an appeal precludes the maintenance of a malicious prosecution action because the proceedings are not considered terminated until after the rendition of judgment in the appellate court. *See* 52 Am. Jur.2d *Malicious Prosecution* § 44 (1970); 54 C.J.S. *Malicious Prosecution* § 53 (1987); *Barrett Mobile Home Transport, Inc. v. McGugin*, 530 So.2d 730 (Ala.1988); and *Cazares v. Church of Scientology of California, Inc.*, 444 So.2d 442 (Fla.App.1983). Other courts have held that the right to maintain an action for malicious prosecution accrues on the rendition of judgment, in the prior action,

---

**5.** We take judicial notice of our records which indicate that the McDougals' petition of appeal in their medical malpractice case was filed on January 28, 1994. This date, however, is not determinative in our disposition of this issue.

by the trial court, whether or not an appeal is taken from the judgment. *See* 52 Am. Jur.2d, *supra;* and *Scannell v. County of Riverside,* 152 Cal.App.3d 596, 199 Cal.Rptr. 644 (1984). As noted by defendants Venezia, Harvit and Shinaberry, some of these latter courts also subscribe to what these defendants termed the "tacking doctrine." *See Bob Baker Enterprises, Inc. v. Chrysler Corp.,* 30 Cal.App.4th 678, 36 Cal.Rptr.2d 12 (1994).

■ A case that we find helpful in deciding the issue before us is *Levering v. National Bank of Morrow County,* 87 Ohio St. 117, 100 N.E. 322 (1912) in which the court held in syllabus point 2,

> The right to sue for malicious prosecution of a civil action accrues upon the rendition in the trial court of a judgment for the defendant in the action complained of, and is barred by the statute of limitations if not brought within one year after such judgment, although a proceeding in error may have intervened.

The court reasoned, in part, that,

> A proceeding in error could not affect the right of the defendant to bring his action for malicious prosecution, because ... if the judgment should be finally reversed, that may be pleaded as a defense to the pending action for malicious prosecution. The pendency of a proceeding in error may be a good reason for a stay of proceedings in the action for malicious prosecution until the error proceeding is disposed of, but it would be no reason for dismissing the petition for damages on account of malicious prosecution.

*Levering,* 87 Ohio St. at 122, 100 N.E. at 323 (citations omitted).

This Court's previous holding on the issue of when the statute of limitation commences in a malicious prosecution action is in accord with *Levering.* In *Allen v. Burdett,* 89 W.Va. 615, 109 S.E. 739 (1921), the defendants brought an involuntary bankruptcy proceeding against the plaintiff who was ultimately adjudged not to be bankrupt. More than one year later, the plaintiff instituted a malicious prosecution action against the defendants stemming from the involuntary

bankruptcy proceeding. The defendants contended that the malicious prosecution action was barred by the statute of limitation. The plaintiff responded that inasmuch as the defendants could have appealed from or sought a rehearing concerning the judgment, the plaintiff's malicious prosecution action did not accrue "until the expiration of the time within which an appeal might be taken or a petition to rehear filed ...," 89 W.Va. at 618, 109 S.E. at 740, which period was less than one year prior to the institution of the plaintiff's malicious prosecution action.

We rejected the plaintiff's contention in *Allen* and explained:

> When the court in which the suit alleged to be maliciously prosecuted is pending has complete jurisdiction and renders a judgment finally disposing of the matters, that judgment is final and conclusive upon the parties to the suit until it is gotten rid of by some appropriate process, and certainly so long as it stands without any proceeding being taken to review it, it constitutes a termination of the suit in which it is rendered.
>
> . . .
>
> [W]here a judgment has been rendered by a court in which a suit has been instituted which finally disposes of that suit adversely to the plaintiff, the defendant may maintain a suit for the malicious prosecution of such suit without waiting for the time to expire within which appellate proceedings may be instituted, and this being true, of course, it follows that the Statute of Limitations begins to run against him from the entry of the judgment finally disposing of the suit alleged to be maliciously prosecuted[.]

89 W.Va. at 619, 621, 109 S.E. at 740, 741. Thus we concluded,

> The right to sue for malicious prosecution of a civil action accrues upon the rendition in the trial court of a judgment for the defendant in the action complained of, and is barred by the statute of limitations if not asserted within one year after such judgment, although the plaintiff in the suit which it is claimed was maliciously prosecuted may have a right to apply for

an appeal or a rehearing, of which he does not avail himself.

Syllabus Point 1, *Allen*. We did not decide in *Allen* whether a malicious prosecution action begins to run from the termination of the complained of action in the trial court when an appeal of the original suit is actually pending.[6] We now hold that it does.

The rule we adopt in this case is consistent with our holding in *Allen* which was based, in part, on this Court's finding that a termination of an action occurs "[w]hen the court in which the suit alleged to be maliciously prosecuted is pending has complete jurisdiction and renders a judgment finally disposing of the matters." *Allen*, 89 W.Va. at 619, 109 S.E. at 740. This finding is no less true in cases in which there is an appeal pending inasmuch as the trial court's judgment is still final *until it is actually reversed or set aside by this Court*. We simply find no reason to recognize one rule in cases, such as *Allen*, in which no petition of appeal has yet been filed, and another rule in cases like the instant one in which an appeal is pending. Also, we reject the "tacking doctrine" recommended by some of the defendants because we believe it interjects needless complexity into malicious prosecution suits. In contrast, the rule that the limitation period commences on the termination of the complained of action in the trial court, regardless of whether there is an appeal pending, is simple and easy to apply.

█ In addition, the tort of malicious prosecution traditionally has been disfavored. *See Long v. Egnor*, 176 W.Va. 628, 346 S.E.2d 778 (1986). *See also Villa v. Cole*, 4 Cal.App.4th 1327, 6 Cal.Rptr.2d 644 (1992); *Sangster v. Paetkau*, 68 Cal.App.4th 151, 80 Cal.Rptr.2d 66 (1998); 52 Am.Jur.2d, *Malicious Prosecution*, § 5 (1970) ("It is frequently said that the action for malicious prosecution is not favored in law." (Footnote omitted)); and 54 C.J.S., *Malicious Prosecution*, § 4 (1987). This is because of "its tendency to impose a 'chilling effect' on the willingness of ordinary citizens . . . to bring potentially valid civil claims to court." *Villa*

*v. Cole*, 4 Cal.App.4th at 1334–1335, 6 Cal. Rptr.2d at 648 (citations omitted). As one commentator has opined,

In case of civil proceedings, a litigant should be entitled to have his rights determined without the risk of being sued and having to respond in damages for seeking to enforce his rights, and a suit for malicious prosecution cannot be prosecuted merely as a retaliation for a bona fide civil action.

52 C.J.S., *supra* (footnotes omitted). Because of these concerns, the action for malicious prosecution "has been hedged about by limitations more stringent than those surrounding actions based on almost any other conduct causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with." 52 Am.Jur.2d, *supra* (footnote omitted).

A stringent limitation placed on malicious prosecution actions by this Court is the rule that such actions must be brought within one year from the termination of the underlying action. If this Court were to adopt the position urged on us by the plaintiff, it would extend indefinitely the time period for bringing a malicious prosecution action in cases in which appeals are pending. In the instant case, for example, the trial court's final order was entered on September 9, 1993, and the plaintiff did not file her malicious prosecution action until January 23, 1996, over two and one-half years later. Such a result is clearly at odds with the policy of limiting the tort to prevent its negative effect on potentially valid claims.

Further, we note that in *Allen* it was argued that there was no final determination of the suit alleged to have been maliciously prosecuted until the right to appeal is barred, especially inasmuch as the judgment in that suit may be appealed as a matter of right. This Court stated, however, that "under our authorities a proceeding to review a final judgment by appeal . . . is treated as a new suit, and not as a continuation of a suit in which the judgment or decree appealed from

---

6. In *Allen*, this Court stated "[w]hat effect the actual pendency of an appeal may have upon the right to maintain a suit for malicious prosecution

we need not determine in this case, for the question does not arise." 89 W.Va. at 620, 109 S.E. at 741.

**32**

was rendered." *Allen,* 89 W.Va. at 618–619, 109 S.E. at 740. *See also Wingfield v. Neal,* 60 W.Va. 106, 54 S.E. 47 (1906); and *Levering, supra.* In the instant case, this means that the underlying medical malpractice action was terminated with the trial court's entry of its final order so that the one year limitation period for the bringing of a malicious prosecution action began to run at that time. The filing of the petition of appeal did not affect the running of the limitation period because the appeal constituted a new and separate action.

■ Finally, we are confident that the potential problem of inconsistent judgments will not arise as a result of the rule we adopt herein. In a case in which a party institutes a malicious prosecution action during the pendency of the appeal of the underlying case, as suggested by the court in *Levering, supra,* the circuit court may stay the malicious prosecution proceedings until the appeal is disposed of. If the judgment is ultimately reversed on appeal, the reversal may be pleaded as a defense to the pending action for malicious prosecution.

■ For the above reasons, we conclude that the right to bring an action for malicious prosecution accrues upon the termination of the action complained of in the trial court and is barred by the statute of limitation if not asserted within one year after such termination, although an appeal of the action complained of is pending. Under this rule, the termination of the action complained of in the trial court is the trial court's entry of its final order which terminates litigation between the parties and leaves nothing to be done but to enforce the execution of what has been determined. *See James M.B. v. Carolyn M.,* 193 W.Va. 289, 456 S.E.2d 16 (1995).[7] In the instant case, the plaintiff's right to bring an action for malicious prosecution accrued and the one-year statute of limitation began to run on September 7, 1993, the date of the order in which the trial court denied all post-trial motions. Because the plaintiff

did not bring her malicious prosecution claim until January 23, 1996, the claim is time-barred.

### B.

### Tort of Outrage Claim

■ The second issue in the first certified question is whether the statute of limitation bars the plaintiff's tort of outrage or intentional infliction of emotional distress claim. Our law is clear that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syllabus Point 6, *Harless v. First Nat. Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982). "[T]he hallmark of this tort . . . is intentional and outrageous conduct," *Harless,* 169 W.Va. at 695, 289 S.E.2d at 704, which is,

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Tanner v. Rite Aid of West Virginia, Inc.,* 194 W.Va. 643, 651, 461 S.E.2d 149, 157 (1995) (*quoting* Restatement (Second) of Torts § 46(1) Comment (d) (1965)). *See also Stump v. Ashland, Inc.,* 201 W.Va. 541, 499 S.E.2d 41 (1997); and *Travis v. Alcon Laboratories, Inc.,* 202 W.Va. 369, 504 S.E.2d 419 (1998). As noted above, the tort of outrage has a two-year statute of limitation. In Syllabus Point 8 of *Travis, supra,* we recently held,

[i]n claims for intentionally or recklessly inflicted emotional distress that arise from the termination of employment, the two-year statute of limitation for personal inju-

---

7. In Syllabus Point 3 of *James M.B., supra,* we stated:

Under W.Va.Code, 58–5–1 (1925), appeals only may be taken from final decisions of a circuit court. A case is final only when it

terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.

ries begins to run on the date of the last extreme and outrageous conduct, or threat of extreme and outrageous conduct, which precipitated the termination of employment.

If a tort of outrage claim can arise from the bringing of a lawsuit, an issue which we do not reach in this case, it is reasonable that the two-year limitation period begins to run on the date of the last extreme and outrageous conduct. The question, therefore, is when this occurred under the instant facts.

█ Unlike malicious prosecution cases, the final resolution of the litigation giving rise to the complained of claim is not an essential element of the tort of outrage. Nevertheless, the last outrageous conduct in a tort of outrage claim arising from the institution of a suit may be alleged to have occurred, as in a malicious prosecution claim, upon the termination of the suit. This is true in the instant case where the defendants argue that the date of the last outrageous conduct occurred no later than the trial court's entry of the judgment order on June 16, 1993. The plaintiff avers, on the other hand, that the defendants' actionable outrageous conduct continued until this Court ruled in her favor on February 17, 1995.

The determination of the exact date the last outrageous conduct occurred in a tort of outrage claim arising from the institution of a lawsuit would necessarily be determined on a case by case basis. In the instant case, it is not necessary to make this determination. It is sufficient, rather, for us to conclude that any outrageous conduct in the instant case occurred prior to or on the date of the ultimate termination, in the trial court, of the action complained of, which was in September 1993. We believe that the defendants' act of appealing the adverse circuit court judgment on behalf of their clients after this date did not constitute the kind of extreme and outrageous conduct contemplated in a tort of outrage claim. W.Va.Code § 58–5–1 (1998) grants a statutory right to appeal in civil cases.[8] In appealing the underlying judgment on behalf of their clients, the de-

fendants were simply exercising this right. Also, the defendants' petition for appeal on behalf of their clients was granted by this Court and disposed of by an opinion in which error, albeit harmless, was found in the proceedings below.

Because we find that any outrageous conduct by the defendants must have occurred no later than September 7, 1993, a tort of outrage claim based on this conduct had to be brought prior to September 7, 1995 in order to be timely. The plaintiff, however, did not bring her tort of outrage claim against the defendants until January 23, 1996, well beyond the two-year limitation period. Accordingly, we find that the plaintiff's tort of outrage claim is time-barred.

To summarize, we find that the plaintiff's malicious prosecution and tort of outrage claims are both barred by their respective statutes of limitation. Therefore, we answer the first certified question in the affirmative. Further, in light of our answer to the first certified question, we find it unnecessary to answer the remaining certified questions. Accordingly, we conclude that the second and third certified questions are moot.

## IV.

## CONCLUSION

After analyzing each of the certified questions from the Circuit Court of Harrison County, we respond as follows:

I. Whether, the applicable West Virginia statute of limitation bars claims for malicious prosecution and the tort of outrage where the jury verdict was entered in the underlying medical malpractice action more than 2 ½ years prior to suit but the final decision on appeal of the underlying action was entered within one year of the filing of this suit and the plaintiff's earlier action for malicious prosecution and tort of outrage had been brought and voluntarily dismissed pending the decision on appeal.

ANSWER: Yes.

8. W.Va.Code § 58–5–1(a) (1925), in effect when the defendants appealed to this Court, likewise provided a statutory right of appeal. Acts 1998,

c. 110, effective June 17, 1998, amended and reenacted Chapter 58, article 5 concerning appellate relief in this Court.

II. Whether, a medical malpractice countersuit against the attorneys for the plaintiff in the underlying medical malpractice suit fails to state a claim in West Virginia based upon malicious prosecution and the tort of outrage, particularly where:

a. the malicious prosecution claim cannot be maintained in the absence of the essential element that the medical malpractice claim was brought without probable cause, and the medical malpractice court, in the underlying case, found that a prima facie medical malpractice case had been proven therein and denied the motion for a directed verdict therein; and,

b. The mere initiation and pursuit of a medical malpractice action provides no basis for a claim that the attorney defendants engaged in extreme and outrageous conduct, as a matter of law.

ANSWER: Moot.

III. Whether, the defendant attorneys had an absolute right and duty to pursue the underlying medical malpractice case on behalf of their client in the underlying medical malpractice action, thereby precluding the plaintiff herein from maintaining a medical malpractice countersuit.

ANSWER: Moot.

Certified questions answered.