599 S.E.2d 856

**Mark VANSICKLE, Plaintiff**

v.

**Edward R. KOHOUT, Defendant.**

**No. 31666.**

Supreme Court of Appeals of West Virginia.

Submitted June 9, 2004.

Decided June 25, 2004.

Dissenting Opinion of Justice Starcher July 8, 2004.

Starcher, J., dissented and filed opinion.

Jane E. Peak, Allan N. Karlin & Associates, Morgantown, for Plaintiff.

John F. McCuskey, Christopher J. Sears., Shuman, McCuskey & Slicer, Charleston, for Defendant.

McGRAW, Justice:

In this case, the Court considers two certified questions concerning legal malpractice actions. The lower court asks how a statute of limitations should be applied in cases where an injured client retains a second lawyer in an attempt to mitigate the harm caused by the first lawyer's malpractice. For the reasons set forth below, we conclude that an injured client's cause of action accrues at the time of the legal malpractice, or its discovery, and that the injured client's subsequent efforts with new counsel to mitigate the harm do not toll the running of the statute of limitations.

## I.

### FACTS

This is a legal malpractice action that has as its source the workers' compensation claim of the appellee, Mark VanSickle. Mr. VanSickle, a coal miner, was injured on the job on July 21, 1988, nearly sixteen years ago. He filed a claim that the Workers' Compensation Division found to be compensable, but his employer protested the claim. As a result, Mr. VanSickle retained the Morgantown law firm of Hamstead, Hamstead & Williams to represent him. On December 5, 1990, the Workers' Compensation Commissioner awarded Mr. VanSickle a 5% permanent partial disability award; Mr. VanSickle had 30 days to appeal the award if he disa-

greed with the decision. For reasons unknown, no action was taken until January 30, 1991, when Mr. Kohout wrote a letter to the Commissioner protesting the ruling.[1] On February 22, 1991, the Commissioner rejected the protest because it had been filed late. About a year later, on January 23, 1992, Mr. VanSickle discharged the law firm of Hamstead, Hamstead & Williams and hired his present counsel, Allan N. Karlin & Associates.

Almost four years later, Mr. Kohout signed the first of several so-called tolling agreements which stated in pertinent part:

> It is understood and agreed that the applicable statute of limitation period(s) for the aforementioned claims is hereby tolled, and will be tolled to and will be suspended from running as of October 30, 1995....
>
> It is further agreed that this Tolling Agreement does not apply to any claims that any party may have against the other in which the statute of limitation has already expired on some date prior to October 30, 1995. This agreement will not toll any statute of limitations that has expired prior to October 30, 1995 and this agreement will not bar parties from asserting a statute of limitation defense on any claims in which the statute of limitations has already expired on some date prior to October 30, 1995.

This first agreement ran for one year, and Mr. Kohout continued to sign extensions of this agreement in 1997, 1998, and 1999, with the 1999 extension noting that it was the last one he would sign, and it would expire April 30, 2000. When Mr. Kohout refused to sign another agreement, Mr. VanSickle filed the instant malpractice against him on April 28, 2000. The lower court certified two questions to this court:

> Does a cause of action for legal malpractice accrue prior to the final resolution of the party's efforts to reverse or mitigate the harm through administrative and/or judicial appeals?

Lower court's answer: NO

> Is the statute of limitations in a legal malpractice cause of action tolled during the pendency of the party's efforts to reverse or mitigate the harm through administrative and/or judicial appeals?

Lower court's answer: YES.

As we discuss with greater particularity below, we disagree with the lower court on both questions.

## II.

## STANDARD OF REVIEW

■ We review, *de novo* a lower court's answers to certified questions. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996); syl. pt. 2, *Keplinger v. Virginia Electric & Power Co.,* 208 W.Va. 11, 537 S.E.2d 632 (2000); syl. pt. 2, *Charter Communications v. Community Antenna Serv., Inc.,* 211 W.Va. 71, 561 S.E.2d 793 (2002); syl. pt. 1, *Board of Educ. of County of Taylor v. Board of Educ. of County of Marion,* 213 W.Va. 182, 578 S.E.2d 376 (2003). Or, in other words, when "we are asked to answer a certified question, our review of the matter is plenary." *In re West Virginia Asbestos Litigation,* 215 W.Va. 39, 41, 592 S.E.2d 818, 820 (2003).

## III.

## DISCUSSION

This Court has wrestled previously with the question of when a client can or must sue his or her attorney for malpractice without running afoul of a statute of limitations. In the case of *Smith v. Stacy,* 198 W.Va. 498, 482 S.E.2d 115 (1996), the Smiths retained attorney Stacy to represent them in the sale of a cemetery owned by the Smith family. Stacy advised the Smiths to take certain actions that resulted in the Smiths being

---

1. We note from the record that it is Mr. Kohout's position that Mr. VanSickle was never his client, but was instead the client of the law firm of Hamstead, Hamstead & Williams, where Mr. Kohout worked at the time. Mr. Kohout claims that he wrote the letter in a ministerial capacity and that the case actually belonged to another attorney in the firm. This issue remains in dispute.

sued by a third party. Ultimately the Smiths sued Stacy for malpractice, but the lower court granted summary judgment for Stacy based upon the running of the statute of limitations. The Smiths argued, in part, that because Stacy had continued to represent them after he malpracticed, that the statute of limitations had not run on their claim.

■ This Court agreed with the Smiths, and adopted what we call the continuous representation doctrine for attorney malpractice claims. Specifically, the Court held:

> West Virginia adopts the continuous representation doctrine through which the statute of limitations in an attorney malpractice action is tolled until the professional relationship terminates with respect to the matter underlying the malpractice action.[2]

Syl. pt. 6, *Smith v. Stacy*, 198 W.Va. 498, 482 S.E.2d 115 (1996). The Court went on to explain that the continuous representation doctrine, "is designed, in part, to protect the integrity of the professional relationship by permitting the allegedly negligent attorney to attempt to remedy the effects of the malpractice and providing uninterrupted service to the client." 198 W.Va. at 503, 482 S.E.2d at 120. Relying on a treatise to better explain the concept, the Court stated:

> The purpose of the continuous representation rule is to avoid unnecessarily disrupting the attorney-client relationship. Adoption of the rule was a direct reaction to the illogical requirement of the occurrence rule, which compels clients to sue their attorneys although the relationship continues and there has not been and may never be any injury. The rule, limited to the context of continuous representation, also is consistent with the purpose of the statute of limitations, which is to prevent stale claims and enable the defendant to

preserve evidence. When the attorney continues to represent the client in the subject matter in which the error has occurred, all such objectives are achieved and preserved. The attorney-client relationship is maintained and speculative malpractice litigation is avoided.

> The rule of continuous representation is available and appropriate in those jurisdictions adopting the damage and discovery rules. The policy reasons are as compelling for allowing an attorney to continue efforts to remedy a bad result, even if some damages have occurred and even if the client is fully aware of the attorney's error. The doctrine is fair to all concerned parties. The attorney has the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages. The client is not forced to end the relationship, although the option exists. This result is consistent with any expressed policy basis for the statute of limitations.

*Id.*, 198 W.Va. at 505, 482 S.E.2d at 122 (1996) (quoting Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice* § 21.12, at 817 (4th ed. 1996) (footnotes omitted)). Another reason to toll the statute while representation continues is to protect the client from efforts by the attorney to wait out the running of the statute. Again, as explained in *Stacy:*

> This "continuous representation" rule was adopted in order to avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.

2. The Court went on to hold that:
 The limitations period for a legal malpractice claim is not tolled by the continuous representation rule where an attorney's subsequent role is only tangentially related to legal representation the attorney provided in the matter in which he was allegedly negligent.
 The continuous representation doctrine applies only to malpractice actions in which there is clear indicia of an ongoing, continuous, devel-

 oping, and dependent relationship between the client and the attorney.
 The continuous representation doctrine should only be applied where the attorney's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship.
 Syl. pts. 7, 8, 9, *Smith v. Stacy*, 198 W.Va. 498, 482 S.E.2d 115 (1996).

*Smith v. Stacy,* 198 W.Va. 498, 506, 482 S.E.2d 115, 123 (1996) (quoting *Laird v. Blacker,* 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 557, 828 P.2d 691, 698, *cert. denied,* 506 U.S. 1021, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992) (citations and internal quotations omitted)).

Having explained why our law makes an exception for the continuing representation doctrine, we turn to Mr. VanSickle's arguments. Essentially, Mr. VanSickle argues that we extend the logic of the continuous representation rule to the extent that any ongoing action to mitigate the damages from an act of malpractice will toll the statute until the case reaches an ultimate administrative or judicial resolution. He claims that this "exhaustion of appeals" doctrine offers the best protection to clients injured by malpractice. Mr. Kohout argues that such a result places an unfair burden on a client who wants to file a malpractice action sooner, and suspends the sword of Damocles over the malpracticing attorney for an indefinite period of time.

 We find ourselves in agreement with Mr. Kohout, and in disagreement with the lower court. The general rule under our law is that a cause of action for a tort accrues when an injury occurs, or when an injured party discovers, or should have discovered, his or her injury:

> Generally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs; under the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim.

Syl. Pt. 1, *Cart v. Marcum,* 188 W.Va. 241, 423 S.E.2d 644 (1992); *accord,* syl. pt. 2, *Bradshaw v. Soulsby,* 210 W.Va. 682, 558 S.E.2d 681 (2001); syl. pt. 5, *Vorholt v. One Valley Bank,* 201 W.Va. 480, 498 S.E.2d 241 (1997). Or, in other terms: "The statute of limitations ordinarily begins to run when the right to bring an action for personal injuries accrues[,] which is when the injury is inflicted." Syl. pt. 1, *Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986); *accord,* syl. pt. 2, *DeRocchis v. Matlack, Inc.,* 194 W.Va. 417, 460 S.E.2d 663 (1995). This Court has noted:

The basic purpose of statutes of limitations is to encourage promptness in instituting actions; to suppress stale demands or fraudulent claims; and to avoid inconvenience which may result from delay in asserting rights or claims when it is practicable to assert them.

*Morgan v. Grace Hospital, Inc.,* 149 W.Va. 783, 791, 144 S.E.2d 156, 161 (1965) (citations omitted).

We do not believe we should ignore these principles and adopt an entirely different statute of limitations for lawyer malpractice actions. The instant case presents a cautionary example of why we should not adopt such a different .standard. The underlying malpractice in this case took place over 16 years ago; memories have faded; Mr. Kohout no longer even practices law. Legal malpractice is a rare tort in that, often, subsequent court action can literally make it disappear. Courts can't reattach limbs or run the clock backwards and undo a car wreck; but they can sometimes undo a legal malpractice. But as this case shows us, the wheels of justice turn slowly. We believe that it would be bad for both clients and attorneys if malpractice actions were granted the near immortality requested by Mr. VanSickle.

 Consequently, we answer the questions certified to us by the lower court as follows:

> Does a cause of action for legal malpractice accrue prior to the final resolution of the party's efforts to reverse or mitigate the harm through administrative and/or judicial appeals?
>
> Our answer, Yes.
>
> Is the statute of limitations in a legal malpractice cause of action tolled during the pendency of the party's efforts to reverse or mitigate the harm through administrative and/or judicial appeals?
>
> Our answer, No.

Therefore, we hold that a cause of action for legal malpractice accrues when the malpractice occurs, or when the client knows, or by reasonable diligence should know, of the malpractice. Furthermore, we hold that, when a victim of legal malpractice terminates his or her relationship with the malpracticing attor-

ney, subsequent efforts by new counsel to reverse or mitigate the harm through administrative or judicial appeals do not toll the statute of limitations.

■ Our holding does not mean that lawyers cannot enter into tolling agreements in cases such as the instant case where the amount of damages may yet be uncertain. Nor does our ruling mean that malpractice actions may not be stayed by a court, once filed, in order to await the conclusion of some other proceeding that might establish a client's damages. This holding is also in accord with out decision in *McCammon v. Oldaker*, 205 W.Va. 24, 516 S.E.2d 38 (1999), in which we ruled that the statute of limitations for malicious prosecution actions is not tolled by the filing of an appeal in the underlying action.[3]

■ This decision is also in agreement with other aspects of our holding in *Smith v. Stacy*, 198 W.Va. 498, 482 S.E.2d 115 (1996). Specifically, that the statute of limitations is not tolled "where an attorney's subsequent role is only tangentially related,"[4] to the action that involved the malpractice, or when the continuing representation is "merely continuity of a general professional relationship."[5]

However, answering these certified questions does not resolve all the issues in the instant case. We note that the parties in this case signed not one, but four agreements tolling the statute of limitations. Mr. Kohout argues that the agreements contain an exclusion for any action for which the statute of limitations has already run prior to the signing of the first agreement. While this argument appears facially correct, we are left to wonder why the parties signed the agreements at all, for as this Court has asked before, "[w]hy do a vain and futile thing?" *Milam v. Settle*, 127 W.Va. 271, 279, 32 S.E.2d 269, 272 (1944). "Courts are not supposed to do vain and futile things." *Monongahela Railway Co. v. Wilson*, 122 W.Va. 467, 473, 10 S.E.2d 795, 798 (1940), and we would argue the same holds true for lawyers. But these questions, as well as the question of just what damages Mr. VanSickle has suffered remain to be answered by the trial court or finder of fact, and not this Court.

## IV.

### CONCLUSION

Having answered the certified questions, we remand this case the lower court for proceedings consistent with this opinion.

Certified Questions Answered.

Justice STARCHER dissents and files a dissenting opinion.

STARCHER, J., dissenting:

(Filed July 8, 2004)

I dissent to the majority's opinion—although I recognize that it is based on sound legal reasoning. Statutes of limitation by their nature can lead to harsh results. They are not designed as rules of "fairness," but are rather a legal tool designed to award the parties with repose. No matter the merit of

**3.** The full syllabus point reads:

> The right to bring an action for malicious prosecution accrues upon the termination of the action complained of in the trial court and is barred by the statute of limitation if not asserted within one year after such termination, although an appeal of the action complained of is pending. Under this rule, the termination of the action complained of in the trial court is the trial court's entry of its final order which terminates litigation between the parties and leaves nothing to be done but to enforce the execution of what has been determined.

Syl. pt. 5, *McCammon v. Oldaker*, 205 W.Va. 24, 516 S.E.2d 38 (1999). The Court went on to explain:

> If this Court were to adopt the position urged on us by the plaintiff, it would extend indefinitely the time period for bringing a malicious prosecution action in cases in which appeals are pending. In the instant case, for example, the trial court's final order was entered on September 9, 1993, and the plaintiff did not file her malicious prosecution action until January 23, 1996, over two and one-half years later. Such a result is clearly at odds with the policy of limiting the tort to prevent its negative effect on potentially valid claims.

*Id.*, 205 W.Va. at 31, 516 S.E.2d at 45 (1999).

**4.** Syl. pt. 7, *Smith v. Stacy*, 198 W.Va. 498, 482 S.E.2d 115 (1996).

**5.** Syl. pt. 9, *Smith v. Stacy*, 198 W.Va. 498, 482 S.E.2d 115 (1996).

one side's case, the other side—at some time—is free to move on without responsibility, merely because of the passage of time.

While statutes of limitation are effective legal rules that permit average citizens to move on, I am troubled by their application to wrongdoing by lawyers. Lawyers carry a heavy responsibility in our society, and that burden grows as legal transactions grow ever more complex. Citizens untrained in the legal arts necessarily rely on their chosen lawyers for honest, competent service. When those lawyers err, and in doing so thwart a citizen's ability to obtain relief through the legal process, the citizen should be permitted to obtain relief from the responsible lawyer through the same legal process.

I am troubled by the majority opinion, because I believe it uses a statute of limitation to create a patent unfairness in the law. A citizen who did nothing wrong was harmed by a lawyer's mistake. Rather than immediately sue the lawyer, the citizen sought the services of another lawyer and did everything possible to minimize or rectify the mistake. The citizen now seeks full recovery from his original lawyer, and the majority is saying that the citizen's failure to promptly sue his original lawyer results in the citizen being barred by the legal system from a full recovery of his damages.

I dissent to such an unfair result.

Davis, J., dissented and filed an opinion joined by Maynard, C.J.