# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2023 Term

_____

No. 22-ICA-168

_____

FILED

**November 13, 2023**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

DONALD C. NICHOLS,
Plaintiff Below, Petitioner

v.

MARONEY WILLIAMS WEAVER & PANCAKE PLLC and
PATRICK K. MARONEY,
Defendants below, Respondents.

_____

Appeal from the Circuit Court of Kanawha County
Honorable Joanna I. Tabit, Judge
Civil Action No. 20-C-518

AFFIRMED
_____

Submitted: October 10, 2023
Filed: November 13, 2023

Matthew B. Hansberry, Esq.                Clayton T. Harkins, Esq.
Hansberry & Wagoner, PLLC                 Kevin A. Nelson, Esq.
Bridgeport, West Virginia                 Dinsmore & Shohl LLP
Counsel for Petitioner                    Charleston, West Virginia
                                          Counsel for Respondents

JUDGE SCARR delivered the Opinion of the Court.

SCARR, JUDGE:

This appeal involves a legal malpractice action brought by Donald C. Nichols against Patrick K. Maroney and Maroney Williams Weaver & Pancake PLLC (collectively, "the defendants"). The lower court granted summary judgment in favor of the defendants, finding that Mr. Nichols' complaint did not adequately plead a claim for breach of contract, and further that his negligence claim was barred by the statute of limitations. For the reasons stated below, we affirm the decision of the lower court.

## I. FACTUAL AND PROCEDURAL HISTORY

During his 39-year career at FMC, Mr. Nichols was allegedly exposed to benzene on a number of his job assignments. Thirteen years after he retired, he was diagnosed with multiple myeloma, a severe and aggressive type of cancer that affects certain blood cells which make antibodies.[1] In January 2014, Mr. Nichols filed an application for workers' compensation benefits related to his cancer. Dr. Justin Cohen, who signed his workers' compensation application, indicated that Mr. Nichols' multiple myeloma was a "possible" occupational disease. The claim administrator denied his claim

---

[1] "[M]ultiple myeloma is a cancer of the plasma cell, a cell which arises in bone marrow and is an important part of the immune system as it provides antibodies which help fight infection and other diseases. If a plasma cell becomes malignant, it is called a myeloma cell. An individual with myeloma has an abnormal build-up of myeloma cells in the bone marrow with displacement of normal marrow and which results in tumors that involve and destroy surrounding bone." *Harris v. CSX Transp., Inc.*, 232 W. Va. 617, 623, 753 S.E.2d 275, 281 (2013), quoting *World City Found, Inc., v. Sachetti*, No. 114829/03, 2008 WL 344131, at *4 (N.Y. Sup. Ct. Jan. 28, 2008).

1

because there was no definitive opinion by a medical professional stating that multiple myeloma had been caused by chemical exposure in the workplace and because the employer was unaware of any exposure which would have caused Mr. Nichols to develop this cancer thirteen-and-one-half years after he retired.

On March 28, 2014, Mr. Nichols signed an "Authority to Represent and Limited Power of Attorney" with the law firm of Maroney Williams Weaver & Pancake PLLC to represent him regarding his workers' compensation claim. The firm was not retained to represent Mr. Nichols regarding any tort claims he might have related to his multiple myeloma. Instead, he hired another law firm to bring a personal injury action against FMC and various chemical suppliers. This personal injury lawsuit was filed in Marshall County, West Virginia sometime during 2015. This other action is only relevant to our current appeal because certain positions taken in pleadings filed in the Marshall County lawsuit have been referenced in some of the arguments made by the parties here.

On June 15, 2017, the Workers' Compensation Office of Judges ("Office of Judges") issued a decision affirming the denial of occupational disease benefits by the claim administrator. In its decision, the Office of Judges noted that the only persuasive medical evidence in the record came from the defendants' medical expert, who opined that benzene exposure did not cause Mr. Nichols' multiple myeloma, and that the scientific

literature did not support even general causation.[2] The Office of Judges also noted that the application for Occupational Disease benefits was not placed in evidence, but the claim administrator's denial of the claim, which was placed in evidence by the defendants, noted that Dr. Cohen had opined that Mr. Nichols' multiple myeloma was only a "possible" occupational disease. Both Mr. Nichols and his attorney, Patrick K. Maroney, were copied on this opinion, as indicated by the signature page of the decision, see appendix record at 06, and Mr. Nichols has never denied receiving it. The parties agree that no medical expert testified on behalf of Mr. Nichols when his claim was presented to the Office of Judges.

> By letter dated June 27, 2017, the defendants advised Mr. Nichols that:
>
> Per our discussion on June 26, 2017, please be advised we will not be appealing the June 15, 2017 Order of the Administrative Law Judge to the Workers' Compensation Board of Review. Based upon the evidence in your claim, it does not appear that the Board of Review will enter a favorable decision for you. It is our opinion that any further appeal of your claim will be unsuccessful.

Appendix at 142. The letter went on to explain that Mr. Nichols could file an appeal on his own or obtain the services of another attorney if he wished to pursue this matter. The letter

---

[2] General causation concerns whether an occupational exposure can cause a particular disease. For example, whether asbestos can cause lung cancer. Specific causation concerns whether an occupational exposure caused that disease in a particular person. For example, whether asbestos exposure caused lung cancer in a plaintiff. Philip Combs & Andrew Cooke, *Modern Products Liability Law in West Virginia*, 113 W. Va. L. Rev. 417, 512-13 (Winter 2011); *Meade v. Parsley*, No. 2:09-cv-00388, 2010 WL 4909435, at *5 (S.D. W. Va. Nov. 24, 2010) (memorandum opinion and order); s*ee generally San Francisco v. Wendy's Int'l, Inc.*, 221 W. Va. 734, 758 n. 12, 656 S.E. 2d 485, 509 n. 12 (2007) (Davis, J., concurring).

also advised that any appeal would have to be filed within thirty days of the final order from the Office of Judges. No appeal was ever filed from the unfavorable ruling by the Office of Judges.

Mr. Nichols has never denied receiving this letter. In fact, he contends that the language of this letter constituted fraudulent concealment on the part of his counsel, thereby tolling his statute of limitations, because it did not indicate that Mr. Nichols might have a potential malpractice claim against the defendants. Mr. Nichols has not denied that he met with counsel on the day before this letter was dated, nor has he indicated what might have been discussed during this meeting if it occurred. The bottom of this letter also indicated that there was an enclosure, but if so, that enclosure was not included in the record on appeal.

On June 25, 2020, Mr. Nichols filed a legal malpractice action in the Circuit Court of Kanawha County against Mr. Maroney and his firm.[3] The complaint contained two counts, one styled "Breach of Express and/or Implied Contract" and one styled "Negligence." The complaint did not refer to any specific language of the retainer agreement that was allegedly breached by the defendants. According to the complaint, Mr. Nichols incurred approximately $800,000 of health care expenses that he contends would have been covered by workers' compensation had his claim been accepted. He also asserted

---

[3] Mr. Maroney was the lawyer at Maroney Williams Weaver & Pancake PLLC who was primarily responsible for working on Mr. Nichols' workers' compensation claim.

that his separate personal injury action against FMC was compromised by the adverse ruling in the workers' compensation proceeding.[4]

In response to Mr. Nichols' complaint, the defendants filed an answer which included a motion to dismiss the negligence claim on the grounds that it was time barred, having been filed more than two years after the Office of Judges affirmed the denial of Mr. Nichols' workers' compensation claim. The decision by the claim administrator denying this claim and the letter by counsel dated June 27, 2017, were attached as exhibits to this pleading. On August 27, 2020, Mr. Nichols filed a response to the motion to dismiss, arguing, in part, that there were issues of fact inappropriate for decision on a motion to dismiss, and that additional discovery was required. His response invoked both the discovery rule and fraudulent concealment and asserted that he was not aware of defendants' negligence until January 13, 2020, when FMC asserted a res judicata defense in the separate personal injury action filed by other counsel in Marshall County.[5]

---

[4] In that case, FMC allegedly filed a pleading on January 13, 2020, asserting that the deliberate intent claim against it was barred by res judicata because of the denial of Mr. Nichols' workers' compensation claim. A copy of this pleading was not included in the record on appeal.

[5] In responding to the partial motion to dismiss and at other times during the proceedings in the lower court, Mr. Nichols also indicated that there was a genuine issue of material fact as to whether the doctrine of continuous representation had tolled his statute of limitations, but that issue has not been raised on appeal.

Simultaneously with his complaint, Mr. Nichols served the defendants with a set of discovery requests which did not did not ask the defendants to identify what efforts, if any, they made to find a medical expert to testify on behalf of Mr. Nichols. In their responses to these discovery requests, the defendants identified everyone in the firm, including both lawyers and support staff, who had worked on Mr. Nichols' workers' compensation claim. They also produced the client file, which encompassed 1198 pages, and included a copy of the retainer agreement. The defendants subsequently supplemented their responses by producing copies of various insurance policies which might provide coverage for the claims involved in this litigation. The defendants' initial responses to discovery were served on September 11, 2020, and the supplemental response was served on July 26, 2021. This one set of discovery requests was the only discovery that was conducted by any of the parties during the roughly two years and three months that this matter was pending.

On April 20, 2022, the defendants filed a motion for summary judgment which covered both the breach of contract and negligence claims asserted by Mr. Nichols. On June 8, 2022, the defendants filed a notice of hearing for August 23, 2022. On June 16, 2022, at the plaintiff's request, the lower court entered an agreed scheduling order establishing deadlines for various events, including a March 31, 2023, deadline to complete discovery. The scheduling order provided for an additional nine-and-a-half months to complete discovery, despite the fact that defendants' motion to dismiss and motion for summary judgment had been set for hearing on August 23, 2022. None of the parties asked

the lower court to continue the hearing date for defendants' motion for summary judgment, either before or after the entry of the scheduling order.

Pursuant to the agreed scheduling order, the parties exchanged disclosures of fact witnesses. Defendants' disclosure of fact witnesses was basically the same as their prior interrogatory answer concerning who had worked on Mr. Nichols' workers' compensation claim, although they did add Dr. Cohen (who had signed the original workers' compensation form), employees of the medical providers who treated him in connection with his cancer, rebuttal witnesses, and any witnesses named by other parties. Their disclosure also reserved the right to identify additional witnesses because "discovery is ongoing."

On August 18, 2022, Mr. Nichols' counsel filed a Rule 56(f) affidavit alleging that additional discovery was needed, stating in pertinent part that: "I anticipate conducting additional discovery in the Civil Action, including depositions and the disclosure of experts, to be utilized in furtherance of Mr. Nichols's case." Counsel also averred that: "I anticipate that such additional discovery will support Mr. Nichols's case." This affidavit did not discuss why the desired discovery had not been conducted, or how it might relate to the narrow issue of whether the statute of limitations had expired.

At the summary judgment hearing on August 23, 2022, the court questioned Mr. Nichols' counsel about what additional discovery was needed. Counsel indicated that

he wanted to identify experts on medical causation and standard of care and said that he had not done so already because expert disclosures were not yet due under the scheduling order. Counsel also noted that the case had been filed during the early days of COVID-19, and that he had not wanted to put a lot of time and effort into the case while a motion to dismiss the negligence claim was still pending. Additionally, Mr. Nichols' counsel speculated that the defendants might make some damaging admissions in deposition. He admitted that they were unlikely to admit that they had committed malpractice (something they had steadfastly denied throughout the litigation) but suggested they might say that something different should have been done.

Substantively, Mr. Nichols' counsel alleged that his client had not been aware of any negligence on the part of the defendants until a certain pleading asserting the defense of res judicata was filed by FMC in his separate personal injury action. Counsel also argued that the letter written by the defendants constituted fraudulent concealment sufficient to toll the statute of limitations because it did not indicate the reason why there was no evidence to establish medical causation in the workers' compensation proceeding, i.e., that the defendants had failed to produce any medical evidence of causation or to challenge the employer's medical expert. Defendants' counsel responded that the absence of any medical testimony to establish that Mr. Nichols' multiple myeloma was the result of his benzene exposure was not caused by lack of effort on their part. They alleged that they had diligently tried to obtain such an expert but had simply been unable to do so. Indeed, they noted, even Mr. Nichols' treating physician had been unable to say that Mr.

Nichols' cancer was anything more than "possibly" related to his alleged occupational exposure.

On September 9, 2022, the lower court entered an order granting the defendants' motion to dismiss and motion for summary judgment and dismissing the case from the docket. Mr. Nichols appeals from this order.

## II.   STANDARD OF REVIEW

"In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). Decisions to grant or deny summary judgment are reviewed *de novo*. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Trial courts have broad discretion when it comes to deciding whether to allow a party to conduct additional discovery before granting summary judgment. *Powderidge Unit Owners Assn. v. Highland Properties, Ltd.*, 196 W. Va. 692, 702, 474 S.E.2d 872, 882 (1996).[6]

---

[6] Given that summary judgment was properly granted on the negligence count, we need not address whether the lower should have granted the motion to dismiss the same count. Thus, we do not reference the standard of review for granting motions to dismiss.

## III. DISCUSSION

In Syllabus Point 5 of *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E. 2d 255 (2009), the court set forth a five-step analysis for determining whether a cause of action is time- barred.

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

In the present case, the applicable statute of limitation is two years for Mr. Nichols' negligence claim, W. Va. Code § 55-2-12 (1959), and either five years or ten years for his breach of contract claim, depending on whether it is based on an oral, implied or written contract. W. Va. § 55-2-6 (1923). The elements for a cause of action occurred when the Office of Judges affirmed the denial of Mr. Nichols' workers' compensation

10

claim on June 15, 2017.[7] We agree with the lower court that Mr. Nichols' complaint did

not adequately allege a claim for breach of contract, and that his negligence claim was not

saved by either the discovery rule or by any fraudulent concealment on the part of the

defendants. No other tolling doctrine was asserted by Mr. Nichols. Consequently, we

affirm the order of the lower court dismissing this malpractice case.

### A. Mr. Nichols' complaint did not adequately plead a claim for breach of contract.

Legal malpractice actions may sound in either tort or contract. Syl. Pt. 2,

*Smith v. Stacy*, 198 W. Va. 498, 482 S.E.2d 115 (1996); Syl. Pt., *Harrison v. Casto*, 165

W. Va. 787, 271 S.E.2d 774 (1980). Claims for breach of contract have a longer statute of

limitations than tort actions based on negligence—ten-years for written contracts and five-

---

[7] The lower court gave Mr. Nichols the benefit of the doubt when deciding when the statute of limitations began to run. In footnote one of its order granting defendants' partial motion to dismiss and motion for summary judgment, it observed that:

> Arguably, the statute of limitations on Plaintiff's claims against Defendants should have begun to run as of the day of his receipt of this June 27, 2017, letter [from counsel]. Because, however, his appeal rights expired on July 15, 2017, and because it is a distinction without a difference as far as the effect of the statute of limitations on his negligence claim is concerned (given that his Complaint was filed nearly three (3) years after the later date), the Court finds that it is appropriate to consider the date of the appeal time as the date on which Plaintiff undeniably knew or should have known that he had an alleged cause of action against defendants.

Because it will not affect our ruling, we do not address whether the statute of limitations began to run when the appeal time expired rather than when Mr. Nichols knew, or should have known, of the decision by the Office of Judges.

years for oral or implied contracts. W. Va. Code § 55-2-6 (1923). Under either the ten-year or the five-year statute, Mr. Nichols' lawsuit would have been timely filed in so far as it pertained to his claim for breach of contract. Defendants argue that the complaint did not adequately plead a claim for breach of contract. We agree with defendants.

A plaintiff may assert a claim for legal malpractice based on breach of contract "[w]here the act complained of in a legal malpractice action is a breach of specific terms of the contract without reference to the legal duties imposed by law on the attorney/client relationship…." Syl. Pt. 2 (in part), *Hall v. Nichols*, 184 W. Va. 466, 400 S.E.2d 901 (1990). "[I]f an attorney fails to perform an act which is covered by the contract of employment such as when he is employed to initiate suit and does not file suit within the statutory period, the breach at issue is one grounded in contract. *Id*. at 469, 400 S.E.2d at 904. However, "[w]here the essential claim of the action is a breach of duty imposed by law on the attorney/client relationship and not the contract itself, the action lies in tort." *Id*. at Syl. Pt. 2 (in part). "A complaint that could be construed as being either in tort or on contract will be presumed to be on contract whenever the action would be barred by the statute of limitation if construed as being in tort." Syl. Pt. 4, *Smith v. Stacey*, 198 W. Va. 498, 482 S.E.2d 115 (1996); *accord* Syl. Pt., *Harrison v. Casto*, 165 W. Va. 787, 789, 271 S.E.2d 774, 776 (1980).

Here, the complaint does not allege a breach of any "specific terms of the contract" between the parties. Instead, it states that the defendants "had a contractual

12

obligation, express or implied, to provide the Plaintiff with competent and effective legal advice, counsel, and representation in all aspects of the Plaintiff's workers' compensation matter." See Paragraph 36 of Complaint, Appendix at 006. Failure to provide "competent and effective legal advice, counsel, and representation," if it occurred, was a breach of the legal and professional duties owed by attorneys to their clients, rather than the breach of a specific duty under an express or implied contract.[8] "Notwithstanding the inclusion of the term 'contractual' in the … complaint, the essence of the appellant['s] cause of action is various breaches of duties implied by *law* and not by contract." *Hall v. Nichols*, 184 W. Va. 466, 469, 400 S.E.2d 901, 904 (1990).

In an effort to bolster his claim for breach of contract, Mr. Nichols asserts that his retainer agreement, by including a limited power of attorney to endorse checks issued to Mr. Nichols, incorporated various duties under the West Virginia Uniform Power of Attorney Act (UPAA), W. Va. Code § 39b-1-101 (2012). Specifically, he argues that the UPAA imposed duties to "[a]ct with care, competence and diligence ordinarily exercised by agents in similar circumstances," W. Va. Code § 39B-1-114(b) (3) (2018); to "[a]ct in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest," W. Va. Code § 39B-1-

---

[8] It is also worth noting that the language in the contract count mirrors the language in the negligence count. Compare Paragraphs 36, 37 and 38 (alleging that the defendants breached their contractual duties by failing "to provide the plaintiff with competent and effective legal advice, counsel, and representation") with Paragraphs 45 and 46 (alleging that the defendants were negligent because they failed "to provide the Plaintiff with competent and effective legal advice, counsel, and representation").

114(a)(1) (2018), to "[a]ct in good faith," W. Va. Code § 39B-1-114 (a) (2) (2018); to "[a]ct loyally for the principal's benefit," W. Va. Code § 39B-1-114 (b) (1) (2018); and to "[a]ct only within the scope of authority granted in the power of attorney," W. Va. Code § 39B-1-114(a) (3) (2018). We are not persuaded by this argument for several reasons.

First, the contract signed by the parties incorporated a "Limited Power of Attorney" which appointed "Maroney, Williams, Weaver & Pancake, PLLC, of Charleston, West Virginia, as my true and lawful attorney for me and in my name to endorse any and all checks I receive from the Claims Administrator, or any other source, relating to the above- styled claim." The complaint does not allege any malpractice related to the cashing of checks by the defendants, which was the extent of the limited power of attorney granted by the contract.[9] Second, to the extent the UPAA might import duties such as to act with "care, competence and diligence," it does not create any duties that would not otherwise flow from the attorney-client relationship.

---

[9] Mr. Nichols asserts that the retainer agreement was ambiguous concerning the extent of the defendants' power of attorney. Whether a contract is ambiguous is a question of law freely reviewable on appeal. Syl. Pt. 1 (in part), *Berkely Cnty. Pub. Ser. Dist. v. Vitro Corp. of America*, 152 W. Va. 252, 162 S.E.2d 189 (1968). In this case, the retainer agreement was not ambiguous. The reference to a "limited power of attorney" in the style of the document, coupled with a statement of the purpose of the power of attorney ("to endorse any and all checks I may receive from the Claims Administrator, or any other source, related to the above-styled claim."), clearly defined the extent of the power of attorney.

**B. The lower court correctly held that a genuine issue of material fact did not exist as to whether the negligence claim was time barred.**

The statute of limitations for negligence actions is two years from the time when the cause of action accrued. W. Va. Code § 55-2-12 (1959). In this case, the alleged malpractice occurred more than two years before the lawsuit was filed. Accordingly, the defendants argue that Mr. Nichols' negligence claim was time barred and properly dismissed by the lower court. Mr. Nichols responds that his claim was not barred by the statute of limitations because he did not discover the malpractice until January 13, 2020, when FMC claimed that his deliberate intent claim in a separate personal injury lawsuit was barred by res judicata because his workers' compensation claim had been denied. He also argues that the statute of limitations was tolled by the allegedly fraudulent concealment of the defendants in their letter of June 27, 2017. We find that the lower court did not err in rejecting both of Mr. Nichols' arguments.

Under the discovery rule, "[a] cause of action for legal malpractice accrues when the malpractice occurs or when the client knows, or by reasonable diligence should know, of the malpractice." Syl. Pt. 5, *VanSickle v. Kuhout*, 215 W. Va. 433, 599 S.E.2d 856 (2004). The statute of limitations begins to run on a negligence claim:

> when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a casual relation to the injury.

15

Syl. Pt. 3, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009). Regarding the requirement to exercise reasonable diligence to investigate potential claims, we note that "[w]here a plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding that potential breach." *McCoy v. Miller*, 213 W. Va. 161, 165, 578 S.E.2d 355, 359 (2003) (per curiam).

In the case at bar, the Office of Judges issued a decision affirming the denial of Mr. Nichols' workers' compensation benefits because no medical evidence had been presented to establish that Mr. Nichols' multiple myeloma was caused by his occupational exposure to benzene.[10] The decision also noted that the workers' compensation application where Dr. Cohen indicated that multiple myeloma was a "possible" occupational disease had not been introduced into evidence and could not be reviewed. The disclosure that counsel had failed to produce any medical evidence of causation or even to submit the

---

[10] In Paragraph 6 of its decision, the Office of Judges summarized the closing statement submitted by the employer, saying: "The employer stated that there is no medical evidence establishing a causal connection between the claimant's development of multiple myeloma and his occupation. The employer stated that this is a case where lay witness testimony is not efficient [sic] to establish causation. **The employer stated that the claimant did not introduce an opinion from a physician or any other expert to link the multiple myeloma to his occupation. The claimant did not introduce a medical opinion to establish that he even has the condition for which he is seeking benefits."** (Emphasis added). See Appendix at 043.The decision's list of exhibits submitted on behalf of Mr. Nichols also reveals that his counsel did not provide an expert report, any deposition testimony by a medical expert, any medical records, any medical literature, or a closing statement.

16

workers' compensation form was sufficient in itself to put Mr. Nichols on notice that he had a potential claim for legal malpractice against the defendants and to start the clock running on the statute of limitations.

In its order, the lower court found that: "It is indisputable that plaintiff's claim was denied, and he was informed of that fact, by both the [Office of Judges] and his former counsel." Order at page 12, Appendix 257. The lower court also found that:

> At issue is when Plaintiff either knew or should have known that he allegedly had a claim against Defendants in this action. It is the inescapable conclusion that the appropriate date for that knowledge to have been obtained is June 15, 2017 [date when the Office of Judges affirmed the denial of claim], at the latest.

*Id*. See also order at page 10, Appendix at 255 ("… the [Office of Judges] affirmed the TPA's denial of Plaintiff's claim for occupational disease benefits on June 15, 2017… The [Office of Judges] decision notified Plaintiff of his right to file an appeal within thirty (30) days of its receipt.").

The finding of the lower court that the Office of Judges notified Mr. Nichols of the affirmance of the claim administrator's denial of benefits, and his right to appeal, was not clearly erroneous. The opinion from the Office of Judges indicates that Mr. Nichols and his counsel were both copied on this opinion, which clearly states that the denial was affirmed because of the absence of any supporting medical evidence. Moreover, Mr. Nichols never denied receiving this decision, or receiving it before the statute ran, as one

might expect him to do if that were the case. *See Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W. Va. 692, 699, 474 S.E.2d 872, 879 (1996) ("The plaintiff bore the burden, as the party opposing the [summary judgment] motion, of coming forward with affirmative evidence proving its allegation that it did not know, or by exercise of reasonable diligence should have known, the nature of its injury and its sources prior to the alleged 1990 discovery.").

In addition to receiving the decision from the Office of Judges, Mr. Nichols received a letter from counsel stating that his workers' compensation claim had been denied, that the defendants would not be filing an appeal, and that if Mr. Nichols wanted to file an appeal on his own or through counsel, that it would have to be done within thirty days of the decision. The letter also indicates that the defendants believe that an appeal would be unlikely to succeed because of the evidence in the case. There is no dispute that this letter was received by Mr. Nichols.[11]

Mr. Nichols argues that he did not discover the negligence of the defendants until FMC filed a pleading in his separate personal injury action on January 13, 2020, alleging that the deliberate action claim against it was barred by res judicata because his

---

[11] According to this June 27, 2017, letter, Mr. Nichols met with counsel the day before. Mr. Nichols has never denied that this meeting took place. Although the record does not indicate what might have been discussed during this meeting, it would have provided Mr. Nichols with an opportunity to ask any questions he might have had concerning the dismissal of his workers' compensation claim.

workers' compensation claim had been denied. We do not find this argument compelling for a number of reasons. First, the information contained in the June 15, 2017, decision from the Office of Judges and the June 27, 2017, letter from counsel was sufficient to put him on notice of his potential malpractice claim. Second, the January 13, 2020, FMC pleading referenced by Mr. Nichols was not made part of the record on review. Third, to the extent that this pleading may have put Mr. Nichols on notice of an additional element of damages, that would not be relevant as to when his statute of limitations started to run on any potential legal malpractice claims related to the handling of his workers' compensation claim. *See* 51 Am. Jur. 2d *Limitation of Actions* §131 Westlaw (database updated October 2023) ("… the full amount of the damage does not have to be apparent at the time of the first legal injury, and a statute of limitations does not begin to run only from the time when the full extent of the damages sustained have been ascertained.") (footnote omitted); Syl. Pt. 2, *Hall's Park Motel, Inc. v Rover Const., Inc.*, 194 W. Va. 309, 460 S.E.2d 444 (1995) (when there is some noticeable injury to property, the statute of limitations begins to run and is not tolled because there may be some latent injury subsequently arising from the same event); Syl. Pt. 3, *Jones v. Trs. of Bethany Coll.*, 177 W. Va. 168, 351 S.E. 2d 183 (1986) (the statute of limitations begins to run when there is some noticeable personal injury from a traumatic event and is not tolled because there might be some latent injury arising from the same event).

Here, the cause of action would have been complete when there was duty, breach, causation, and damages. Mr. Nichols suffered damages, allegedly to the tune of at

least $800,000 when his workers' compensation claim was denied. The discovery of additional potential damages related to his separate personal injury action against FMC would not have extended the statute of limitations when he was already aware of some damages resulting from the denial of his workers' compensation claim.

Having addressed Mr. Nichols' argument based on the discovery rule, we now consider his claim that the defendants were guilty of fraudulent concealment which would have tolled his statute of limitations. This argument is grounded on the following language in defendants' letter of June 27, 2017: "Based upon the evidence in your claim, it does not appear that the Board of Review will enter a favorable decision for you. It is our opinion that any further appeal of your claim will unsuccessful." Mr. Nichols contends that this language was misleading because it did not explain that the evidence in the claim was insufficient because the defendants had not produced any medical evidence to support causation. According to Mr. Nichols, the defendants fraudulently concealed their potential malpractice when they failed to expressly acknowledge that it was malpractice not to submit any medical evidence in support of Mr. Nichols' workers' compensation claim.

"Fraudulent concealment involves the concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Dunn v. Rockwell*, 225 W. Va. 43, 52, 689 S.E.2d 255, 264 (2009) quoting *Trafalgar House Const., Inc. v. ZMM, Inc.*, 211 W. Va. 578, 584, 567 S.E.2d 294, 300 (2002) (per curiam).

> [I]n some circumstances causal relationships are so well established that we cannot excuse a plaintiff who pleads ignorance. In those instances where a cause of action should be patently obvious …, the plaintiff cannot claim ignorance. The only way a plaintiff can toll the statute of limitation in such circumstances is to make "a strong showing ... that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury."

*Keesecker v. Bird*, 200 W. Va. 667, 684, 490 S.E.2d 754, 771 (1997).

Fraud usually requires an affirmative misrepresentation, but silence may constitute fraud where a party has a duty to speak. 37 Am. Jur. 2d *Fraud and Deceit §*197 Westlaw, (database updated October 2023). The rules of professional conduct do impose a duty on attorneys to keep their clients reasonably informed of important developments in their cases. *See* W. Va. Rules of Prof. Conduct 1.4 [12] and 1.7. [13] These rules create ethical,

---

[12] Rule 1.4(a) provides in pertinent part: "(a) A lawyer shall: … (3) keep the client reasonably informed about the status of the matter;… (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." "A client cannot make an informed decision about representation if that client is unaware that the lawyer may have committed malpractice." Opinion 684, New Jersey Advisory Comm. on Prof. Ethics, 151 N.J.L.J.994 (March 9, 1998), http://lawlibrary.rutgers.u./ethics/acpe/684.

[13] Rule 1.7 (a) provides in pertinent part: "Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: … (2) there is a significant risk that the representation … will be materially limited by … a personal interest of the lawyer." Subparagraph (b) goes on to say that an attorney may represent a client, notwithstanding a concurrent conflict of interest if: "the lawyer reasonable believes that the lawyer will be able to provide competent and diligent representation…and [the] client gives informed consent, confirmed in writing." As ABA Comm. on Ethics & Prof. Resp., Formal Op. 481 (2018) warns:

rather than legal responsibilities. *See* W. Va. Rules of Pro. Conduct: Scope [20].[14]

Nonetheless, they can provide evidence of what the legal standard of care should be. *Id.*

Under our rules of professional conduct, a lawyer has a duty to inform a client of a serious error that a disinterested lawyer would conclude was reasonably likely to prejudice a client's interests or would reasonably cause a client to consider terminating representation regardless of prejudice. *See generally* ABA Comm. on Ethics & Pro. Resp., Formal Op. 481 at 1 and 8 (2018) (concluding that Rule 1.4 requires an attorney to inform a client if the lawyer believes that he has committed a "material error" and that "an error is

> An error may be sufficiently serious that it creates a conflict of interest between the lawyer and the client… Where a lawyer's error creates a Rule 1.7 (a) (2) conflict, the client needs to know this fact to make informed decisions regarding the representation, including whether to discharge the lawyer or to consent to the conflict of interest.

In cases where there is a potential malpractice claim, an attorney might have a personal interest in defending himself against personal liability, in avoiding personal or professional embarrassment, or in preserving his professional insurance coverage which adversely affects his ability to effectively represent his client. At the same time, however, a properly informed client might decide to continue representation, especially where the attorney is actively involved in trying to correct or mitigate his error. In any case, it is for the client to decide whether to continue to retain counsel after being informed of the circumstances.

[14] "[20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached…. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. …Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct." W. Va. Rules of Pro. Conduct: Scope [20].

material if a disinterested lawyer would conclude that it is (a) reasonably likely to harm or prejudice a client; or (b) of such a nature that it would reasonably cause a client to consider terminating the representation even in the absence of harm or prejudice."). As the Restatement (Third) of the Law Governing Lawyers § 20, cmt. C, Westlaw (Am. L. Inst. database updated October 2023) states:

> If the lawyer's conduct of the matter gives the client a substantial malpractice claim against the lawyer, the lawyer must disclose that to the client. For example, a lawyer who fails to file a suit for a client within the limitations period must so inform the client, pointing out the possibility of a malpractice suit and the resulting conflict of interest that may require the lawyer to withdraw.[15]

In some cases, a failure to inform a client of a serious error might be sufficient to establish fraud. However, we conclude that the statute of limitations in this case was not tolled by fraudulent concealment. Even if the letter from counsel did not adequately inform the plaintiff of the status of his workers' compensation claim, the Office of Judges decision was sufficient to put Mr. Nichols on notice of his potential malpractice claim. Although

---

[15] A lawyer should promptly notify a client of a material error. In some cases, it may be appropriate to attempt to take reasonable measures to correct the error before speaking with the client. ABA Comm. on Ethics & Prof. Resp., Formal Op. 481 at 5 (2018). "Whether it is reasonable for the lawyer to attempt to correct the error before informing the client will depend on the facts and should take into account the time needed to correct the error and the lawyer's obligation to keep the client reasonably informed about the status of the matter." *Id*. We also note that an attorney is not required to admit that he has committed malpractice. It is sufficient to advise the client of the nature of the error or omission, that it may give rise to a potential claim for malpractice, and that it may be advisable for the client to consult with disinterested counsel concerning whether a legal malpractice claim might be viable or should be pursued. Colo. Bar Ass'n Formal Op. 113 (as modified July 18, 2015); Sean T. O'Neill, The ALPS Risk Management Report: If you Make a Mistake, When and What Should You Tell Your Client?, 2000 Feb. W. Va. Lawyer 24.

counsel's letter arguably was not as informative as it should have been, it did not contradict the information contained in the Office of Judges' decision that the defendants had failed to present any medical evidence to establish the causal link between Mr. Nichols' occupational exposure to benzene and his development of multiple myeloma. Also, the defendants in this case have consistently maintained that they were unable to obtain a medical expert because the science did not support Mr. Nichols' claim. Mr. Nichols did not provide any evidence to refute the defendants' position despite having ample opportunity to research the issue of medical causation, or to depose the defendants.

**C. The lower court did not abuse its discretion in granting summary judgment without allowing the plaintiff to conduct additional discovery.**

Under the rules of civil procedure, a motion for summary judgment may be filed by the defendant at any time, Rule 56(b), but a court should not grant summary judgment until the nonmoving party has had an adequate opportunity to conduct discovery on the issues involved in the motion. *Powderidge Unitv Owners Ass'n v. Highland Props., Ltd.*, 196 W. Va. 692, 701, 474 S.E.2d 872, 881 (1996).

Rule 56 requires the nonmoving party to present affidavits or other material in opposition to summary judgment, but it provides a "procedural 'escape hatch'" when additional discovery is required to oppose a motion for summary judgment. *Id.* at 701, 474 S.E.2d at 881. Rule 56(f) states that:

**(f) When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Although a formal Rule 56(f) affidavit is not always required, the party opposing summary judgment on the grounds that more discovery is required, should, at a minimum, satisfy four requirements:

[Even an informal motion] should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier.

Syl. Pt. 1, *Powderidge Unit Owners Ass'n. v. Highland Properties, Ltd.*, 196 W. Va. 692, 474 S.E.2d 872 (1996); *accord* Syl. Pt., *Elliott v. Schoolcraft*, 213 W. Va. 69, 576 S.E.2d 796 (2002) (per curiam).

In the present case, Mr. Nichols' attorney submitted an affidavit alleging the need for additional discovery. The relevant portions of this affidavit state in their entirety that:

3. I anticipate conducting additional discovery in [this] Civil Action, including depositions and the disclosure of experts, to be utilized in furtherance of Mr. Nichols's case.

4. I anticipate that such additional discovery will support Mr. Nichols's case.

Appendix at 191. This language was woefully inadequate to explain what additional discovery needed to be done in connection with the statute of limitations issue, and why it had not been started, let alone completed, in the two years the case was pending prior to the summary judgment hearing.

At that hearing, Mr. Nichols' counsel was given an opportunity to more fully explain what additional discovery he wished to pursue and to state his reasons why the court should deny or delay a ruling on the summary judgment motion until such additional discovery had been done, but again his reasons were not compelling. Counsel indicated that he wanted to disclose "one or more experts." When pressed, he stated that he wanted to disclose a medical expert to establish causation and an expert on the standard of care. Although such experts certainly would be needed to pursue his case on the merits, he did not indicate why they were needed to defeat summary judgment on the statute of limitations issue, or assuming that they were relevant to that issue, why he had been unable to obtain or disclose such experts already.[16] In order to defeat summary judgment, Mr. Nichols needed to show how the desired discovery related to the statute of limitations issue. *See*

---

[16] For example, Mr. Nichols' attorneys should have been able to obtain a medical expert, if the science supported causation, without *any* discovery from the defendants. Mr. Nichols and his counsel were perfectly capable, on their own, of obtaining medical records, doing research in the medical literature, obtaining work related records that would shed light on exposure, and contacting potential experts.

*Smith v. Chestnut Ridge Storage, LLC*, No. 14-0136, 2014 WL 6607569, at *6 (W. Va. Nov. 21, 2014) (memorandum decision) (affirming summary judgment where Rule 56(f) affidavit did not demonstrate how further discovery could affect relevant issues).

The transcript from the hearing also suggests that counsel may have wanted to depose Mr. Maroney or other employees of his firm. During a discussion about whether there had been any fraudulent concealment, counsel stated that:

> Your honor, respectfully I think we're making a number of assumptions about what they would or would not say in a deposition. And they may not wholesale admit to, "Yes. We knew we committed malpractice," but they may say, "No. This is something that should have been done differently here."

This was speculative at best, and the evidence to establish the need for additional discovery cannot be "conjectural" or "speculative." *Williams v. Precision Coil, Inc*., 194 W. Va. 52, 60, 61 n. 14, 459 S.E.2d 329, 337, 339 n. 14 (1995). Moreover, counsel could have taken the deposition of one or more members of the firm at any time during the two years or so prior to the hearing. In the discovery responses filed by the defendants at the beginning of the case, they identified everyone in the firm who had worked on Mr. Nichols' workers' compensation claim. We find it significant that Mr. Nichols should have possessed much of the information he would need to make his discovery rule and fraudulent concealment arguments without doing any discovery. For example, he would know what he had been told, or what documents he had been provided with, by the defendants, and if he had not retained a particular letter or other document, he could request it from the defendants.

27

Indeed, the defendants provided his client file, which included more than a thousand pages of material, at the beginning of this litigation.

When asked to respond to defendants' argument that two years was more than enough time to conduct the necessary discovery, counsel argued that they had been waiting to see what happened to the motion to dismiss their negligence claim before putting a lot of time and money into developing the case. This argument is not consistent with Mr. Nichols' position that he had a viable claim for breach of contract. Moreover, counsel could have asked the court to set the motion to dismiss for hearing if the defendants did not do so, if Mr. Nichols wanted to determine the strength of his negligence claim before fully committing his resources. Finally, given the damages potentially available in this case, Mr. Nichols should have been willing to expend some time and effort to develop it. According to the complaint, he had about $800,000 in medical expenses that should have been covered by workers' compensation, plus possibly significant damages that might have been recovered from FMC and various chemical suppliers in a separate action brought in Marshall County. Surely, such a sum would justify the time and money required to take a deposition or two or to file some interrogatories asking what efforts the defendants had made to retain a medical expert for the workers' compensation proceeding.

Finally, Mr. Nichols argues that it was inappropriate to grant summary judgment before the deadline for discovery had expired. We agree that at times it would be premature to grant summary judgment before the end of the discovery period, but there is

no hard and fast rule which prevents a court from granting summary judgment earlier in the case. *See Nieves-Romero v. U.S.*, 715 F.3d 375, 380 (1st Cir. 2013) ("… the fact that discovery is still open does not bar a district court from resolving a fully briefed summary judgment motion."); *Beverly v. Wal-Mart Stores, Inc.*, 428 Fed. App'x 449, 452 (5th Cir. 2011) (per curiam) (trial court did not abuse its discretion in granting summary judgment before the discovery deadline where plaintiff failed to explain what testimony employees would provide if located and deposed); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, (11th Cir. 1990) ("The district court is not required to await the completion of discovery before ruling on a motion for summary judgment. … it would be inappropriate to limit summary judgment to cases where discovery is complete in light of the valuable role served by summary judgment and the commitment of discovery issues to 'the sound discretion of the trial judge.'"); 49 C.J.S. *Judgments* §343 Westlaw, (database updated August 2023) ("The fact that discovery is pending or has not been completed does not bar summary judgment in all circumstances…").

*Kanawha County Pub. Lib. Bd. v. Bd. of Edu. of Kanawha Cnty.*, 231 W. Va. 386, 745 S.E.2d 424 (2013) provides a useful discussion of the relationship between scheduling orders and motions for summary judgment. In that case, the defendant argued that entry of summary judgment when no scheduling order had been issued setting forth a timeframe for discovery was erroneous. In making this argument, the defendant relied on Syllabus Point 2 of *Caruso v. Pearce*, 223 W. Va. 544, 678 S.E.2d 50 (2009), which stated:

Rule 16(b) of the *West Virginia Rules of Civil Procedure* [1998] requires active judicial management of a case, and mandates that a trial court "shall ... enter a scheduling order" establishing time frames for the joinder of parties, the amendment of pleadings, the completion of discovery, the filing of dispositive motions, and generally guiding the parties toward a prompt, fair and cost-effective resolution of the case.

The court rejected the argument that summary judgment could not be granted before a discovery deadline was set, declaring:

…that *Caruso* does not stand for the proposition that entry of summary judgment is per se erroneous prior to entry of a Scheduling Order. In fact, we noted, "[a] failure by a judge to issue a scheduling order as required by Rule 16 generally is not deemed by appellate courts sufficient grounds, by itself, for any significant relief."

*Id.* at 400, 745 S.E.2d at 438. The court went on to explain:

Moreover, to construe *Caruso* as affording relief to a party who, in the face of a summary judgment motion, blatantly neglects to do any discovery and then relies on the absence of a scheduling order to survive summary judgment would serve to wholly invalidate the requirements of Rule 56 and *Powderidge* regarding a party's obligations when asserting the need for additional discovery in opposing summary judgment. Our holding in *Caruso* that entry of a Scheduling Order is mandated by the Rules of Civil Procedure was, as plainly set forth in the opinion, intended to *facilitate* the "'swift, inexpensive and just resolution of litigation'"; it was not intended to be used as a weapon by dilatory parties to create a barrier to resolution of cases on their merits.

30

*Id.* We note and share that court's concern about the possibility that parties may use the absence of a scheduling order (or in this case, the fact that the deadline for discovery had not yet expired) as a means to avoid summary judgment when they have not been diligent.

Whether to allow additional discovery is a fact specific inquiry, and we cannot say that the lower court in this case abused its discretion in granting summary judgment on the narrow but dispositive issue of whether the lawsuit was timely filed.[17] In addition to the other facts set out in this opinion, we note that Mr. Nichols did not attempt to obtain any discovery during the roughly four months between the time the motion for summary judgment was filed and the hearing,[18] and did not attempt to obtain a scheduling

---

[17] We are somewhat troubled by the fact that the lower court granted summary judgment when there were almost seven months left to complete discovery under an agreed scheduling order. Nonetheless, given the facts of this case, especially the fact that the matter had already been pending for more than two years, and the failure of plaintiff's counsel to adequately explain why additional discovery was needed to address the limited issue of whether the statute of limitations had run, we cannot say that the trial judge abused her discretion in granting summary judgment without allowing additional discovery.

[18] *See generally* Edward Brunet, *The Timing of Summary Judgment*, 198 F.R.D. 679, 699-700 (2001) stating:

> …a substantial period of time may have been available to the nonmovant between the date of the filing of a motion for summary judgment and the time that the motion is fully briefed. Judges often reason that the nonmovant who did not take advantage of the opportunity to take or complete discovery during the period between the motion and its hearing should not be the beneficiary of Rule 56(f) protection. … Under the interpretation of Rule 56(f) embodied in these decisions, it is necessary for a nonmovant diligently to seek discovery in the time period that precedes a motion for summary judgment.

order until the motion for summary judgment had been filed, more than two years after this action commenced.[19]

## IV.     CONCLUSION

The decision of the lower court granting summary judgment because the negligence claim was time barred and the breach of contract claim was not adequately plead is hereby affirmed.

Affirmed.

---

Id. at 699-700.

[19] We also note, however, that it is desirable to enter a scheduling order setting a deadline for completing discovery early in a case. *See Caruso v. Pearce*, 223 W. Va. 544, 549, 678 S.E.2d 50, 55 (2009) (noting that trial courts should try to enter a scheduling order within one or two months after the defendant has filed an answer). We realize that it may not be possible to do so in every case. We also recognize that parties, as well as courts, share responsibility for making sure that scheduling orders are entered early in a case.